[Crim. No. 6038.   Second Dist., Div. Three.   Sept. 4, 1958.]

THE PEOPLE, Respondent, v. THOMAS JACKSON, Appellant.

Thomas Jackson, in pro. per., for Appellant.

No appearance for Respondent.

SHINN, P. J.—Thomas Jackson was charged by information in Count I with selling, furnishing and giving away a preparation of heroin on February 25, 1957; in Count II, with selling and furnishing a substance falsely represented to be a narcotic on March 2, 1957; and in Count III, with the commission of a like offense on March 5, 1957.   (Health & Saf. Code, §§ 11500, 11502.)   It was also alleged that defendant had suffered two previous felony convictions and had served terms of imprisonment therefor in state prison.   Jackson pleaded not guilty and denied the prior convictions.   Trial was to the court.   As shown by the reporter's transcript the court found defendant guilty as charged in the information.   As shown by the clerk's transcript he was found guilty on Count III and the court

also found to be true the allegations of the prior convictions. Jackson's application for probation was denied. The court dismissed Counts I and II of the information and sentenced defendant to state prison on Count III for the term prescribed by law. Jackson appeals from the judgment.

The evidence consisted of that received at the preliminary hearing and additional evidence introduced at the trial. Bart Natisin, a Los Angeles County sheriff's deputy assigned to the narcotics detail, was the chief witness for the People. The following is the substance of his testimony. On February 25, 1957, the officer listened to a telephone conversation between defendant and a female informant over the ear piece of the latter's telephone. Natisin stated that he heard the informer tell Jackson that she "had a cat who would like to score and who had $25.00 to go." In the officer's expert opinion, the word "cat" signified a person familiar with narcotics and the word "score" meant to purchase a narcotic; the phrase "$25.00 to go" referred to the agreed purchase price. At about 2:30 p. m., Natisin and the informer drove to the corner of Santa Barbara Avenue and Figueroa Street in the city of Los Angeles, where they met defendant. Jackson said to the informant: "Let's take a walk and get the bread [i.e., the money] first." Defendant and the informer walked away; they were gone for a few minutes. Upon their return, they got into the officer's car. Defendant handed a small bindle to the informer, who gave it to Natisin. The bindle was proved to contain heroin.

At about 3:30 p. m. on March 2, 1957, Natisin and the informant drove to the corner of 60th Street and Western Avenue in Los Angeles. Defendant arrived shortly thereafter and said: "Let's take a walk." Jackson departed, accompanied by the informer. The latter returned after a few minutes and told Natisin that defendant wanted the rest of his money. Natisin walked over to Jackson's car, which was parked around the corner. Defendant said: "The stuff is by your foot, right at the rear of the car." The officer retrieved a small package from the ground beside the car and gave defendant $5.00. He then asked Jackson whether he could buy a half ounce of heroin. Defendant said that "the stuff would be real good" and told the officer to telephone him. Inside the package retrieved by Natisin was a white powder which was proved not to contain a narcotic.

On March 5, 1957, Officer Natisin telephoned defendant and arranged to meet him that afternoon. Around 3:30 p. m.

the officer drove to the Better Foods Market at Santa Barbara and Western Avenues in Los Angeles and parked on the parking lot. He had in his possession $175 in currency. Defendant drove onto the lot, parked, and walked toward Natisin's car. As Jackson approached, the officer saw him drop a small package beside the left rear tire of another car. Natisin handed defendant $75, got out of his car, picked up the bindle, and left a $100 bill in its place. The bindle contained a white powder which was proved to be milk sugar. The three packages purchased by the officer were received in evidence without objection.

Officer Natisin testified on cross-examination that the informant had been arrested for a narcotics violation prior to February 25th and that he was aware of that fact at the time he first met defendant. He also stated that the informant began her telephone conversation with defendant by saying: "This is Julie." She did not give her last name to defendant. This testimony was elicited over the objections of the deputy district attorney that it involved confidential information. In arguing that the information was not confidential, defendant's counsel stated: "Well, the defendant knows the informant, so it couldn't be confidential."

Jackson was arrested at his home in the late afternoon of March 5th by J. R. Stroh, a Los Angeles County sheriff's deputy and several other officers. The officers had neither a search warrant nor a warrant for defendant's arrest. Officer Stroh testified that he had furnished Officer Natisin with $175 in currency earlier the same day. The bills were of the following denominations: One $100 bill, five $10 bills and five $5.00 bills. Stroh dusted the bills with anthracine powder, a fluorescent substance, before giving them to Natisin and made a note of the serial numbers. About $200 was found on defendant's person after his arrest. Stroh tested the money with an ultra-violet light and found traces of fluorescent powder on bills of the same denominations as those he had given to Natisin. There were also traces of powder on Jackson's hands. The officer compared the serial numbers of the bills discovered in defendant's pockets with the numbers of the bills he had previously given to Natisin; they were identical.

Upon being questioned by the officers, Jackson said that a "cat" had given him the $200 found on his person. Stroh asked him "For what?" and defendant replied "You know." The officers then asked Jackson whether he had any narcotics

paraphernalia and defendant said that he did. Jackson led them to the bathroom and showed them some hypodermic needles and some packages of powder; one of the packages was proved to contain heroin while the others were proved to contain milk sugar. When asked how much heroin he was selling and how much he was using, defendant told the officers: "Man, I use as much as I can sell." The needles and powders found in defendant's home were received in evidence without objection.

With respect to the prior convictions, the People introduced in evidence certified copies of official records showing that one Thomas Jackson had previously been convicted of two felonies and had served terms of imprisonment therefor in a California state prison. It was stipulated that defendant was the person named in the records.

Defendant testified that he did not sell any heroin to Officer Natisin. He did not give any packages to the officer. On two or three occasions, he was approached by Natisin and a Miss Julie Smith, whom he already knew. Miss Smith introduced Natisin to defendant; Natisin asked him if he could arrange to obtain narcotics, but Jackson refused. Defendant stated that he had between $60 and $80 on his person at the time of his arrest. The money belonged to him and he did not get it from the officer.

As we said earlier, the court found defendant guilty of the three offenses alleged in the information, but dismissed the charges involving the transactions occurring February 25th and March 2nd.

Upon request for appointment of counsel on the present appeal, the court referred the matter to the Los Angeles Bar Association Committee on Criminal Appeals for report to the court as to possible merit in the appeal. The matter was assigned to a member of the committee who has made written report to the court stating that the record had been examined and that in the opinion of the attorney it disclosed no valid ground of appeal. After we had examined the record, the request for appointment of counsel was denied. Defendant was duly so advised and his time to file a brief was substantially extended. No brief has been filed. In accordance with our practice, we have made a thorough study of the record. We have discovered no insufficiency of the evidence and no error at the trial.

Section 11502 of the Health and Safety Code provides in material part: "Every person who agrees, consents, or . . .

offers to unlawfully sell, furnish, . . . or give any narcotic to any person, . . . and then sells, delivers, furnishes, . . . or gives, . . . any other liquid, substance, or material in lieu of any narcotic shall be punished by imprisonment in the county jail for not more than one year, or in the state prison for not more than 10 years."

██ The evidence was sufficient to establish that defendant committed a violation of the statute on March 5, 1957. The testimony of the deputies warranted the court in finding that defendant agreed to sell a half ounce of heroin to Officer Natisin, that the officer gave defendant $175 for the narcotics, and that Jackson gave the officer in exchange a substance which proved to be milk sugar. Although defendant denied selling anything to Natisin, his testimony created only a conflict in the evidence, which was resolved against him by the trier of fact. (*People* v. *Pastrana,* 136 Cal.App.2d 358 [288 P.2d 568].)

██ Defendant was represented by counsel at the trial and his counsel did not object to the introduction in evidence of the substance he sold to Natisin or the narcotics paraphernalia taken from his home. In the absence of a proper objection in the trial court, the admissibility of the evidence may not be questioned on the appeal. (3 Cal.Jur.2d 634.)

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.