[Civ. No. 9904. Third Dist. Oct. 31, 1960.]

H. L. KELLY, Respondent, v. J. H. MAHONEY, as Judge of the Justice Court, etc., et al., Appellants.

Stanley Mosk, Attorney General, Doris H. Maier, Deputy Attorney General, and Stephen P. Galvin, District Attorney, for Appellants.

Kane & Canelo and Thomas J. Kane, Jr., for Respondent.

SCHOTTKY, J.—This is an appeal by J. H. Mahoney, the judge, and the Justice Court of the Livingston Judicial District of Merced County from an order of the Superior Court of Merced County granting a peremptory writ of prohibition restraining the justice court and the judge from further proceeding in an action charging H. L. Kelly with a violation of section 3.01, subdivision H, of Ordinance Number 309 of the county of Merced.

The ordinance referred to provides for a general agricultural zone in which turkey ranches are permitted, "providing a cover crop or other dust control methods are used." A violation of any provision of the ordinance is a misdemeanor. In June 1959, a complaint was filed in the justice court charging Kelly with a violation of the section of the ordinance requiring cover crops or other dust control methods. A demurrer to the complaint was filed. The grounds of the demurrer were, in part, " (2) that the facts stated in the complaint do not constitute an offense." The demurrer was overruled and a petition for a writ of prohibition was then filed in the superior court.

After a hearing the superior court found as follows:

". . . [T]hat the Court and Judge thereof have no jurisdiction to proceed to try petitioner for the alleged offense because said Ordinance is unconstitutional on the following grounds:

"(a) It is unreasonable and discriminatory in that it does not apply to the raising of chickens on chicken ranches but only turkey ranches. The Court further finds that the raising of chickens on chicken ranches also creates a dust problem and also undesirable odors.

"(b) The Ordinance is so vague and indefinite in its terms that reasonable men must guess as to its meaning and differ as to its application. The Court further finds in that connection that this is a penal statute and that it is not so clear and unambiguous that one does not have to speculate as to its meaning.

"(c) The Court further finds that Subdivision (h) of Section 3.01 of Merced County Ordinance No. 309 violates due process of law in that it restricts the reasonable use of property in an arbitrary and discriminatory fashion."

The court thereupon issued its peremptory writ restraining the justice court and the judge thereof from proceeding with

the complaint on file charging Kelly with a violation of the ordinance, and this appeal followed.

In arguing for a reversal of the judgment appellant makes the following major contentions: (1) The ordinance is a valid exercise of the police power and does not deprive respondent of his property without due process of law; (2) the ordinance is not vague, indefinite, or uncertain within the constitutional requirement of due process of law; (3) the ordinance does not deny respondent equal protection of the law or constitute an invalid legislative classification.

In *Miller* v. *Board of Public Works,* 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479], the court in sustaining the constitutionality of a zoning ordinance stated at page 488:

"Much is said about the constitutional guaranties attaching to the ownership of property in the individual. In this behalf it will be noted that:

" 'It is thoroughly established in this country that the rights preserved to the individual by these constitutional provisions are held in subordination to the rights of society. Although one owns property, he may not do with it as he pleases any more than he may act in accordance with his personal desires. As the interest of society justifies restraints upon individual conduct, so, also, does it justify restraints upon the use to which property may be devoted. It was not intended by these constitutional provisions to so far protect the individual in the use of his property as to enable him to use it to the detriment of society. By thus protecting individual rights, society did not part with the power to protect itself or to promote its general well-being. Where the interest of the individual conflicts with the interest of society, such individual interest is subordinated to the general welfare. If in the prosecution of governmental functions it becomes necessary to take private property compensation must be made. But incidental damages to property resulting from governmental activities, or laws passed in the promotion of the public welfare are not considered a taking of the property for which compensation must be made.' (*Carter* v. *Harper,* 182 Wis. 148 [196 N.W. 451]; *Chicago, B. & Q. R. Co.* v. *Illinois, supra* [200 U.S. 561 (26 S.Ct. 341, 50 L.Ed. 596, 4 Ann.Cas. 1175)].)"

Every intendment is in favor of the validity of the zoning ordinance and the wisdom and the necessity of the ordinance are matters of legislative judgment. (*Miller* v. *Board of Public Works,* 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479]; *City of Los Angeles* v. *Gage,* 127 Cal.App.2d 442 [274

P.2d 34] ; *Robinson* v. *City of Los Angeles,* 146 Cal.App.2d 810, 817 [304 P.2d 814].) We are satisfied that the ordinance is a valid exercise of the police power and does not deprive appellant of his property without due process of law.

We do not agree with the finding of the trial court and the contention of respondent that the ordinance "is so vague and indefinite in its terms that reasonable men must guess as to its meaning and differ as to its application [and] . . . is not so clear and unambiguous that one does not have to speculate as to its meaning." These findings cannot be sustained as a matter of law.

 Due process of law requires that a statute be sufficiently definite and certain to inform those subject thereto what is required of them. (*Lorenson* v. *Superior Court,* 35 Cal.2d 49 [216 P.2d 859].) In *Smith* v. *Peterson,* 131 Cal. App.2d 241 [280 P.2d 522, 49 A.L.R.2d 1194], it was held that the words "excessive" or "unusual" as used in the Vehicle Code, requiring that mufflers prevent any excessive or unusual noise, are sufficiently certain to inform persons of ordinary intelligence of the nature of the offense prohibited. Applicable rules of law pertaining to the requirements of certainty in legislative terms are well stated in the Smith case at pages 245-246:

"It is well settled that a criminal statute which is so indefinite, vague and uncertain that the definition of the crime or standard of conduct cannot be ascertained therefrom, is unconstitutional and void. However, there is a uniformity of opinion among the authorities that a statute will not be held void for uncertainty if any reasonable and practical construction can be given to its language. Nor does the fact that its meaning is difficult to ascertain or susceptible of different interpretations render the statute void. All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears. Doubts as to its construction will not justify us in disregarding it. In determining whether a penal statute is sufficiently explicit to inform those who are subject to it what is required of them the courts must endeavor, if possible, to view the statute from the standpoint of the reasonable man who might be subject to its terms. It is not required that a statute, to be valid, have that degree of exactness which inheres in a mathematical theorem. It is

not necessary that a statute furnish detailed plans and specifications of the acts or conduct prohibited. ▮▮▮▮ The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding. (*Lockheed Aircraft Corp.* v. *Superior Court,* 28 Cal.2d 481 [171 P.2d 21, 166 A.L.R. 701]; *Collins* v. *Riley,* 24 Cal.2d 912 [152 P.2d 169]; *Pacific Coast Dairy* v. *Police Court,* 214 Cal. 668 [8 P.2d 140, 80 A.L.R. 1217]; *People* v. *Ring,* 26 Cal.App.2d Supp. 768 [70 P.2d 281]; *Smulson* v. *Board of Dental Examiners,* 47 Cal. App.2d 584 [118 P.2d 483]; *Lorenson* v. *Superior Court,* 35 Cal.2d 49 [216 P.2d 859]; *Sproles* v. *Binford,* 286 U.S. 374 [52 S.Ct. 581, 76 L.Ed. 1167].)'' (See also *People* v. *Mc-Caughan,* 49 Cal.2d 409, 414 [317 P.2d 974].)

▮▮▮▮ We think that the section of the ordinance here under attack is sufficiently definite and certain. It requires turkey ranchers in a designated zone to have a cover crop or other dust control method. The term, ''cover crop or other dust control methods,'' sufficiently discloses the purpose of the legislation, which is to control dust caused by turkeys. The ordinance is sufficiently explicit to inform turkey growers what is required of them, and it is unreasonable to suppose that any turkey rancher in an agricultural zone who is possessed of ordinary intelligence could misunderstand its meaning. As stated in *Smith* v. *Peterson, supra,* it is not necessary that a statute furnish detailed plans and specifications of the acts or conduct prohibited. It was thus unnecessary for the statute here under consideration to specify the type of cover crop required to be planted by turkey ranchers, or to provide specifications for dust control methods in the event a cover crop is not employed.

▮▮▮▮ The finding of the trial court that the subdivision of the ordinance here under attack is unreasonable and discriminatory in that it does not apply to the raising of chickens on chicken ranches cannot be sustained.

This finding presents the problem of legislative classification, and it was for the board of supervisors to determine whether or not the same requirement should apply to chicken ranchers. The test is whether the legislation is based upon some reasonable distinction justifying its restriction to a certain class. (*City of Walnut Creek* v. *Silveira,* 47 Cal.2d 804 [306 P.2d 453]; *Serve Yourself Gas etc. Assn.* v. *Brock,* 39 Cal.2d 813 [249 P.2d 545]; *Dribin* v. *Superior Court,* 37 Cal.2d 345 [231 P.2d 809, 24 A.L.R.2d 864].)

Where legislation is attacked on the ground of improper classification all presumptions and intendments are in favor of the classification, and such legislation will not be overthrown if any set of facts reasonably can be conceived that would sustain it. (*Martin* v. *Superior Court,* 194 Cal. 93 [227 P. 762]; *State* v. *Industrial Acc. Com.,* 48 Cal.2d 365 [310 P.2d 7]; *Acton* v. *Henderson,* 150 Cal.App.2d 1 [309 P.2d 481].) A legislative determination as to what is sufficient to warrant a classification will not be overthrown unless it is clearly arbitrary.

The application of the above principles to the present case demonstrates that the ordinance does not improperly classify turkey ranches or deny the respondent the equal protection of the law. The ordinance requires that turkey ranches in a designated zone shall have a cover crop or employ other dust control methods. The ordinance is uniform in its application. The prohibition applies to all turkey raising. The board of supervisors, the legislative body of the county, obviously was at liberty to consider the dust control problems in the raising of turkeys and legislate with reference thereto.

The question of whether or not the chicken ranches created a sufficient problem to require the same restrictions as were applied to turkey ranches was a question of policy for the board of supervisors to decide, and the court was not justified in holding that the classification was unreasonable. We believe that the court in the instant case sought to exercise a discretion that was exclusively within the power of the board of supervisors.

As was said in the early case of *Ex parte Newman,* 9 Cal. 502, at page 520: ". . . It is not for the judiciary to assume a wisdom which it denies to the Legislature, and exercise a supervision over the discretion of the latter. It is not the province of the judiciary to pass upon the wisdom and policy of legislation; and when it does so, it usurps a power never conferred by the Constitution."

For the reasons hereinbefore set forth we conclude that the court erred in holding that subdivision H of section 3.01 of Ordinance Number 309 of Merced County is unconstitutional and that the judgment restraining the respondent court from further proceedings in the criminal action must be reversed.

The judgment is reversed.

Van Dyke, P. J., and Peek, J., concurred.