[Crim. No. 9710. First Dist., Div. One. Aug. 28, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
ALAN RALPH MEDINA, Defendant and Appellant.

## COUNSEL

Ozro W. Childs, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Joyce F. Nedde and Eugene Kaster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—This is an appeal by defendant from a judgment entered pursuant to a jury verdict finding him guilty of violation of two counts of section 11503 of the Health and Safety Code.[1] Section 11503 makes it unlawful to offer to sell a narcotic and to deliver some substance in lieu of a narcotic.[2]

The evidence adduced at the trial disclosed that defendant on two occasions sold five capsules, which he represented to be "mescaline," to an undercover narcotics agent. Upon analysis none of these capsules contained a narcotic or a restricted dangerous drug. One of the criminologists who made the analysis testified without objection to the composition of "mescaline." He stated, "Mescaline is a compound that is found and can be extracted from peyote cactus. The correct name is la flora. It acts

---

[1] All statutory references are to the Health and Safety Code unless otherwise indicated.

[2] Section 11503 provides: "Every person who agrees, consents, or in any manner offers to unlawfully sell, furnish, transport, administer, or give any narcotic to any person, or offers, arranges, or negotiates to have any narcotic unlawfully sold, delivered, transported, furnished, administered, or given to any person and then sells, delivers, furnishes, transports, administers, or gives, or offers, arranges, or negotiates to have sold, delivered, transported, furnished, administered, or given to any person any other liquid, substance, or material in lieu of any narcotic shall be punished by imprisonment in the county jail for not more than one year, or in the state prison for not more than 10 years."

as a psychomatic agent. . . . It can be manufactured synthetically." He stated that the law classifies mescaline as a narcotic.

Defendant contends that section 11503 requires a specific intent to substitute a nonnarcotic for the promised narcotic and that it was error for the court to have refused to so instruct the jury. We have concluded that section 11503 is not a specific intent crime and that the court properly rejected the proffered instruction.[3]

It is useful to begin by contrasting section 11503 with those statutes which make it a crime to offer to sell a narcotic or a restricted dangerous drug. (§ § 11501, 11912.) It has been held that these statutes require proof of a specific intent to make a sale. (*People* v. *Jackson,* 59 Cal.2d 468, 469-470 [30 Cal.Rptr. 329, 381 P.2d 1]; *People* v. *Allen,* 254 Cal.App.2d 597, 602 [62 Cal.Rptr. 235].)[4] If specific intent is present, the offense is complete at the time of the offer. Delivery of the promised narcotic or dangerous drug is not an essential element of the crime. (*People* v. *Jackson, supra,* at p. 469; *People* v. *Allen, supra,* at p. 602.) On the other hand, this court has previously stated that in applying section 11503 "the important element is the delivering of a nonnarcotic substance after agreeing, with whatever intent, to deliver a narcotic." (*People* v. *Hicks,* 222 Cal.App.2d 265, 273 [35 Cal.Rptr. 149].)[5] This comparison serves to highlight the difference between the statutes and to focus upon the issue raised by defendant which is whether there must be a specific intent to deliver a substance which is not a narcotic.

The cases pertaining to this issue are in conflict. In *People* v. *Lopez,* 213 Cal.App.2d 668, 675 [28 Cal.Rptr. 912], and in *People* v. *Sweet,* 257 Cal.App.2d 167, 171 [65 Cal.Rptr. 31], it was found that section 11503 required a finding of specific intent to deliver a nonnarcotic. However, in both of these cases the defendant was charged with aiding and abetting a violation of section 11503, a distinction which we consider to be significant. In *People* v. *Contreras,* 226 Cal.App.2d 700, 702 [38 Cal.Rptr. 338], it was also stated that section 11503 required proof of specific intent to deliver a nonnarcotic. However, the court cited no

---

[3]The proffered instruction read as follows: "Every person who, with the specific intent to substitute a non-narcotic substance in place of a narcotic, agrees, consents, or offers to unlawfully sell, furnish, administer, or give away any narcotic and then sells, furnishes, administers or gives away a non-narcotic substance, is guilty of a crime.

"Mescaline is a narcotic."

[4]It has been held that section 11911, which proscribes the possession of dangerous drugs for the purpose of sale, also requires proof of a specific intent to sell the drugs. (*People* v. *Newman,* 5 Cal.3d 48, 54 [95 Cal.Rptr. 12, 484 P.2d 1356].)

[5]A hearing was denied by the Supreme Court.

authority nor did it give any reasons for its determination, and we are thus unable to view its statement as a definitive pronouncement on the elements of the crime proscribed by section 11503.[6]

In *People* v. *Northern*, 256 Cal.App.2d 28, 35 [64 Cal.Rptr. 15], the court determined that section 11503 did not require a finding that there was specific intent to deliver a nonnarcotic. In reaching its decision the court analyzed the legislative purpose as well as the prior decisions pertaining to the section. The court's conclusion was drawn in part from this court's decision in *Hicks* and it was subsequently followed in *People* v. *House*, 268 Cal.App.2d 922, 925 [74 Cal.Rptr. 496]. We are persuaded that the conclusion reached in *Northern* represents a correct appraisal of the elements of the offense proscribed by section 11503.

In *Northern* the court noted that various decisions respecting section 11503 had made reference to a report to the Legislature, 1953 Regular Session, by the Assembly Interim Committee of Judiciary. (See *People* v. *Jackson, supra,* 59 Cal.2d 468, 471; *People* v. *Shephard,* 169 Cal.App.2d 283, 287-288 [337 P.2d 214].) The report provides in part that section 11503 "will cover the individual who agrees to sell, furnish, transport, or give away any narcotic, and then delivers some other liquid, substance, or material. These individuals are known to be in a position to violate the law; but, for some reason, they may feel that they are dealing with a law enforcement officer and thus deliver tobacco, water, or some other substance with the result that they have had the intent to commit the crime but are testing out the officer. At the present time, nothing can be done to that person, except to charge [him] with 'bunco.' "

As the court in *Northern* noted, the report proved faulty insofar as it postulated that an individual who specifically intended to sell a narcotic at the time he made the offer could only be charged with "bunco." (256 Cal.App.2d 28, 34.) As we noted above, it has subsequently been established that an individual who specifically intends to sell a narcotic at the time he makes his offer is guilty of violating section 11501. (*People* v. *Jackson, supra,* 59 Cal.2d 468, 469-470.)

The court in *Northern,* as did this court in *Hicks,* then referred to the following statement in *Shephard* as illustrative of the import of section 11503: " 'In any event, without the assistance of the interim committee report, it is apparent that the Legislature had the intention of discouraging anyone from engaging or appearing to engage in the narcotics traffic. Anything which gives sustenance, solace, comfort or encouragement in

[6]In *Lopez* and *Sweet* hearings were denied. No petition for a hearing by the Supreme Court was filed in *Contreras.*

the selling of narcotics or in the agreeing to sell narcotics, can be condemned, and properly so, by the Legislature. It is clear that the statute in question was aimed at discouraging any traffic in narcotics and is therefore within the police power of the state.' " (*People* v. *Shephard, supra,* 169 Cal.App.2d at p. 288.) The court in *Northern* thus observed that "The vice which the statute attacks is one aspect of the narcotics traffic, not fraud or breach of contract." (At p. 34.)

As the aim of the statute is not simply to proscribe fraudulent narcotics traffic, but rather to prohibit anyone from appearing to engage in narcotics traffic, it follows that the intent of the individual delivering the non-narcotic substance is irrelevant. The offense is complete at the time of delivery regardless of the intent with which it is done. (*People* v. *Hicks, supra,* 222 Cal.App.2d 265, 273.) This conclusion is consistent with other decisions which omit any requirement of specific intent in describing the elements of the offense. (*People* v. *Jackson,* 163 Cal.App.2d 355, 359 [329 P.2d 329]; *People* v. *Dalton,* 172 Cal.App.2d 15, 22 [341 P.2d 793].) As specific intent to deliver a nonnarcotic is not required, the court properly refused to instruct the jury that it was an element of the offense.[7]

▇ Defendant next contends that certain provisions of the Health and Safety Code defining what is a narcotic are unconstitutionally vague in that they do not afford notice that mescaline is a narcotic. The sections under attack are subdivisions (*l*) and (*m*) of section 11001 which, in pertinent part, provide as follows: " 'Narcotics,' . . . means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis: . . . (*l*) All parts of the plant of the genus Lophophora whether growing or otherwise; the buttons thereof, the alkaloids extracted from any such plant; and every compound, salt, derivative, mixture or preparation of such plant. (m) Any substance (and any compound, manufacture, salt, derivative, or preparation thereof) which is chemically identical with any of the substances referred to in the foregoing subdivisions."

---

[7]Defendant's instruction was to the effect that there is required a specific intent to substitute a nonnarcotic substance in place of a narcotic. He also contends that the court erred in not instructing the jury that they had to find that defendant had a specific intent to offer to sell mescaline. He concedes that no request was made that such an instruction be given, but urges us to consider the matter because it is likely to recur in other cases. What we have hereinbefore said with respect to specific intent is applicable here. As already observed, the important element in the section is the delivering of a nonnarcotic substance after agreeing with whatever intent, to deliver a narcotic. (*People* v. *Hicks, supra,* 222 Cal.App.2d at p. 273.) The court was thus not required to instruct the jury that defendant had to have a specific intent to offer to sell mescaline. (*People* v. *Northern, supra,* 256 Cal.App.2d 28, 32.)

In evaluating this claim we are guided by certain established principles of statutory construction. ■ We note, first, that all presumptions are in favor of the validity of a statute; that mere doubt is not a sufficient basis for finding it constitutionally defective; and that the invalidity of a statute must be clear and unquestionable. (*Dittus* v. *Cranston,* 53 Cal.2d 284, 286 [1 Cal.Rptr. 327, 347 P.2d 671]; *Jones-Hamilton Co.* v. *Franchise Tax Bd.,* 268 Cal.App.2d 343, 349 [73 Cal.Rptr. 896].) ■ We next observe that, although a criminal statute which is so indefinite, vague, and uncertain as to preclude ascertainment of the conduct which is prohibited is unconstitutional and void, a statute will not be found to be void for uncertainty if any reasonable and practical construction can be given to its proscription. (*People* v. *Madearos,* 230 Cal.App.2d 642, 644 [41 Cal.Rptr. 269]; *Kelly* v. *Mahoney,* 185 Cal.App.2d 799, 803 [8 Cal.Rptr. 521].) As reasonable certainty is all that is required, a statute must be upheld if it can be made reasonably certain by reference to any established technical or common law meaning of the language in question. (*In re Newbern,* 53 Cal.2d 786, 792 [3 Cal.Rptr. 364, 350 P.2d 116]; *American Civil Liberties Union* v. *Board of Education,* 59 Cal.2d 203, 218 [28 Cal.Rptr. 700, 379 P.2d 4]; *People* v. *Victor,* 62 Cal.2d 280, 300 [42 Cal.Rptr. 199, 398 P.2d 391].) ■ In accordance with these principles, it has been found that statutory language is reasonably certain if it can be made certain by simple reference to the dictionary. (*Sultan Turkish Bath* v. *Board Police Comrs.,* 169 Cal.App.2d 188, 200 [337 P.2d 203]; *People* v. *Vaughn,* 196 Cal.App.2d 622, 632 [16 Cal.Rptr. 711]; *People* v. *Johnson,* 147 Cal.App.2d 417, 419 [305 P.2d 82].)

In *Johnson,* it was contended that section 11001, subdivision (*l*), was in contravention of section 24 of article IV of the California Constitution which requires, in part, that all legislative proceedings be in the English language. The court disposed of this contention as follows: "We look first to the dictionaries to ascertain whether a given word is recognized as a part of the English language. Although that may not always be an infallible test it is, in the present case, a satisfactory one. 'Lophophora' is defined in Webster's New International Dictionary, Second Edition, Unabridged: 'A genus of spineless cacti, family Cactaceae, having as the only known species the mescal (L. Williamsii).'" (P. 419.) Further reference to the Second Edition of Webster's discloses that "Mescal" is defined as follows: "A small cactus (Lophophora williamsii), having rounded stems or joints covered with ribbed tubercles, the tops being called *mescal buttons* from their appearance. The plant is used as a stimulant and antispasmodic, esp. among the Mexican Indians, who also employ it as a mild intoxicant in various ceremonials."

We observe that Webster's Third New International Dictionary does

not include a definition of Lophophora, but we do not feel constrained to conclude that this unexplained departure. on the part of the editors of Webster's dictionary serves to render section 11001, subdivision (*l*) unconstitutional. We apprehend that the approach employed in *Johnson* does not restrict us to Webster's dictionary. We first take cognizance that Funk and Wagnall's New Standard Dictionary of the English Language (1963) defines Lophophora as follows: "A genus of tufted cacti found in northern Mexico and adjacent United States territory. They have reddish or white flowers, convex, tubercled ribs, and no spines." We also observe that the required certainty may be established by reference to any demonstrably established technical meaning of the language in question. (*In re Newbern, supra,* 53 Cal.2d 786, 792.) As section 11001, subdivision (*l*), speaks of "the plant of the genus Lophophora" it is appropriate to consult a botanical dictionary in order to determine if the section can be made reasonably certain. This approach is warranted by the fact that it is common knowledge that plants are technically described by terms which are not a matter of everyday conversation. This fact is evident to anyone who has strolled through a park and noted the signs denominating the various plants found along the way.

A discussion of the Lophophora may be found in 2 H. L. Bailey, The Standard Cyclopedia of Horticulture (1944) page 1915. It is stated that the "plant is highly esteemed and even held in superstitious reverence by several tribes of Indians in the mountains of Mex. and in the U.S., on account of its narcotic properties." It is noted that there are a variety of Indian vernacular names for the plant, including mescal button and peyote. It is further stated that "Several alkaloids have been separated from it, among them lophorine, anhalonine, and mescaline."

We observe, too, that the *Johnson* case is not the only case that has taken judicial cognizance of the plant Lophophora and its constituent, mescaline. Thus, in *People* v. *Woody,* 61 Cal.2d 716 [40 Cal.Rptr. 69, 394 P.2d 813], a case holding that California could not constitutionally apply section 11500, prohibiting the unauthorized possession of peyote so as to prevent an Indian tribe from using peyote as a sacramental symbol in a religious ceremony, we find the following statement: "The plant Lophophora williamsii, a small spineless cactus, found in the Rio Grande Valley of Texas and northern Mexico, produces peyote, which grows in small buttons on the top of the cactus. Peyote's principal constituent is mescaline. When taken internally by chewing the buttons or drinking a derivative tea, peyote produces several types of hallucinations, depending primarily upon the user." (At p. 720.)

As section 11001, subdivision (*l*), can be made reasonably

certain by recourse to a standard reference work and to judicial decisions, we find that it is not unconstitutionally vague. It follows from this conclusion that section 11001, subdivision (m), which defines as a narcotic anything chemically identical with the plant Lophophora is not unconstitutionally vague. ■ "[A] statute which declares an act, identified with certainty, to be unlawful is not rendered unconstitutional because the act, as a fact, may not be readily identifiable by the common man as that forbidden by the statute." (*People* v. *Plywood Mfrs. of Cal.,* 137 Cal.App.2d Supp. 859, 866 [291 P.2d 587].) Section 11001, subdivision (m), is thus not constitutionally vulnerable because of the fact that the common man may be unaware of the chemical composition of the narcotic.

■ Defendant's final contention is that the court erred in instructing the jury that mescaline is a narcotic.[8] This instruction was proper because, by virtue of the provisions of section 11001, subdivision (*l*), mescaline is a narcotic as a matter of law. It was not within the jury's province, therefore, to determine whether or not mescaline is a narcotic.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 25, 1972. Peters, J., was of the opinion that the petition should be granted.

---

[8]We observe that defendant himself submitted an instruction that "Mescaline is a narcotic." This statement was included in the specific intent instruction which we have set out verbatim in footnote 3, *supra,* and which for reasons heretofore indicated was properly rejected by the court as an erroneous instruction.