OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

```
        OPINION              :
                             :        No. 89-601
          of                 :
                             :        OCTOBER 24, 1989
 JOHN K. VAN DE KAMP         :
   Attorney General          :
                             :
   RONALD M. WEISKOPF        :
 Deputy Attorney General     :
                             :
```

_____

THE HONORABLE ARLO SMITH, DISTRICT ATTORNEY, CITY AND COUNTY OF SAN FRANCISCO, has requested an opinion on the following question:

Is a ballet teacher employed by a private ballet school required to report instances of child abuse under the Child Abuse and Neglect Reporting Act?

CONCLUSION

A person who teaches ballet at a private ballet school is required to report instances of child abuse under the Child Abuse and Neglect Reporting Act.

ANALYSIS

The Child Abuse and Neglect Reporting Act (Pen. Code, § 11165 et seq.) creates a system whereby "child protective agencies" (i.e., police and sheriff's departments and county welfare and probation departments) can be promptly notified of suspected instances of child abuse so that they can take timely action if necessary to protect the children.[1] (65

_____

[1]The Child Abuse and Neglect Reporting Act (the "Act") is codified as article 2.5 (§§ 11165-11175.5) of chapter 2 of Title 1 of Part 4 of the Penal Code. Before 1987, when it received its current name (§ 11164 added by Stats. 1987, ch. 1444, § 1.5), it was sometimes referred to as the Child Abuse Reporting Law. (See e.g., *Planned Parenthood Affiliates* v. *Van de Kamp* (1986) 181 Cal.App.3d 245, 255; 67 Ops.Cal.Atty.Gen. 235 (1984); 65

Ops.Cal.Atty.Gen. 345, 347 (1982); cf., *Planned Parenthood Affiliates* v. *Van de Kamp* (1986) 181 Cal.App.3d 245, 258, 267, 272, 279; see also, *Krikorian* v. *Barry* (1987) 196 Cal.App.3d 1211, 1216-1217.) The Act does this by requiring certain categories of persons whose occupations place them in contact with children to report to a "child protective agency" when, in the course of their work, they come to know or reasonably suspect that someone under the age of eighteen has been a victim of child abuse. (§ 11166, subd. (a).) These persons are provided with an absolute immunity from any civil or criminal liability in connection with any report they are required or authorized to make under the Act (§ 11172, subd. (a); cf., *Krikorian* v. *Barry*, *supra*, 196 Cal.App.3d 1211, 1215), but their failure to make a required report is a misdemeanor, carrying a maximum punishment of six months in jail and a $1,000 fine. (§ 11172, subd. (e).)

Among the persons who are required to report instances of child abuse are "child care custodians" (§ 11166, subd. (a)), a broad category that includes teachers, day care workers, and a variety of public health and educational professionals. (§ 11165.7; cf., § 11166.5, subd. (a); *Planned Parenthood Affiliates* v. *Van de Kamp*, *supra*). We are asked whether a ballet teacher who teaches ballet at a particular private ballet school is included among them. We conclude that such a person is included in the category of persons who must report instances of child abuse under the Child Abuse and Neglect Reporting Act.

Since the nature of the position and the school has prompted the request for this Opinion, we describe it here as it has been described to us in information accompanying the opinion request: The San Francisco Ballet School is an arm of the San Francisco Ballet Association, a private non-profit organization which operates independently from the City and County of San Francisco. The School derives operating revenue from student tuition for its classes and from funds provided by the Ballet Association. The Ballet Association does not receive general fund revenue from the City and County of San Francisco, but it does receive a grant award as a non-profit private entity from the latter's Publicity and Advertising Fund which is established through the collection of hotel tax revenue.

The Ballet School holds an "Authorization to Operate As a Private Postsecondary Educational Institution" issued by the State of California Department of Education because it has been accredited for its nondegree objective by a national accreditation agency (the National Association of Schools of Dance) recognized by

---

Ops.Cal.Atty.Gen. 345, 345 (1982).) All unidentified statutory references herein will be to the Act as codified in the Penal Code.

the U.S. Department of Education.  (Ed. Code, § 94311, subd. (c)[2];
see generally, 68 Ops.Cal.Atty.Gen. 278 (1985); 67
Ops.Cal.Atty.Gen. 250 (1984).)  The school may participate in the
Student Tuition Recovery Fund", and since it meets the Department
of Health, Education and Welfare's definition of an institution of
higher education, it is eligible to apply for participation in
various student financial assistance programs administered by the
Federal Office of Education.

The teaching staff of the Ballet School is composed
primarily of former professional ballet dancers.  These teachers
are not trained as academic personnel in the traditional sense, but
rather are performing artists who have studied at some of the most
prestigious ballet institutions around the world.  They do not hold
academic degrees in education and they do not necessarily possess
teaching certificates or credentials from the State.  (Cf., Ed.
Code, §§ 44001-44005, 44250.)

The School accepts students beginning at eight years of
age, and provides instruction and performance opportunities
(including performances with the Ballet Company) that prepare them
for careers as professional ballet performers.  [The School also
provides adult classes for persons who are not artists or
performers.]  The School does not provide "academic" instruction
(except as it may bear on dance history and performance technique),
and attendance at it is not mandatory as it is in public or private
educational schools.  (Ed. Code, §§ 48200, 48220, 48222.)[3]

---

[2]Section 94311 of the Education Code provides that no
postsecondary educational institution may offer courses of
education leading to educational, professional, technological, or
vocational objectives unless it has been approved or authorized by
the Superintendent of Public Instruction.  One of the bases on
which that approval/authorization is given is where "an institution
... has accreditation of the institution, program or specific
course of study ... by a national or applicable regional
accrediting agency recognized by the United States Department of
Education...."  (Ed. Code, § 94311, subd. (c).)

[3]Under California's Compulsory Education Law (Ed. Code,
§ 48000 et seq.), every person between the ages of 6 and 16, not
otherwise exempt, is required to attend public full-time day
school. (Ed. Code, § 48200.)  However, that obligation may be
satisfied, inter alia, by attending a private full-time day school
that meets certain statutory standards. (*Id.*, § 48220.)  Among
them is that the private schools "offer instruction in the several
branches of study required to be taught in the public schools of
the state." (*Id.*, § 48222; cf., 70 Ops.Cal.Atty.Gen. 282, 284-285
(1987.)

In addition to regular classes held at the School, the Ballet School conducts a local outreach program in the public schools in San Francisco. This consists of introductory dance sessions or classes in those schools at which the regular public school teachers are always present. The Ballet School teachers who attend this activity are considered to be guest artists or performers. Student attendance at the sessions and classes is required as part of the regular public school arts educational program. A public school student may go on to take dance lessons at the Ballet School itself, but that would not be a mandatory part of his or her regular public education.

It is patent from the foregoing that in the course of his or her profession, a ballet teacher at the San Francisco Ballet School is in daily contact with persons under the age of eighteen. It would also seem fair to say that because of the nature of ballet classes, the ballet teacher would be in a special position to observe instances of child abuse. To return to our question then, when he or she comes to know or reasonably suspect that a student at the School has been a victim of child abuse, must he or she report it under the Child Abuse and Neglect Reporting Act?

Our task in answering the question is to ascertain the intent of the Legislature: Did the Legislature intend for such private school ballet teachers to be included in the class of persons for whom reporting child abuse is compulsory under the Child Abuse and Neglect Reporting Act? (Cf., *Planned Parenthood Affiliates* v. *Van de Kamp*, *supra*, 181 Cal.App.3d 245, 267; *Select Base Materials* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645.) To ascertain that intention we turn first to the words of the statute itself. (*People* v. *Stockton Pregnancy Control Medical Clinic, Inc.* (1988) 203 Cal.App.3d 225, 235; *Moyer* v. *Workmen's Compensation Appeals Board* (1973) 10 Cal.3d 222, 230; *Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 604.)

Section 11166, subdivision (a) of the Child Abuse and Neglect Reporting Act provides in pertinent part as follows:

"[A]ny child care custodian, health practitioner, or employee of a child protective agency who has knowledge of or observes a child in his or her professional capacity or within the scope of his or her employment whom he or she knows or reasonably suspects has been the victim of child abuse shall report the known or suspected instance of child abuse to a child protective agency immediately or as soon as practically possible by telephone and shall prepare and send a written report thereof within 36 hours of receiving the information concerning the incident.... For the purposes of this article, 'reasonable suspicion' means that it is objectively reasonable for a person to entertain such a suspicion, based upon facts that could cause a reasonable

person in a like position, drawing when appropriate on his or her training and experience, to suspect child abuse...."  (Emphasis added.)

For purposes of the Act, the term "child care custodian" is defined in section 11165.7, subdivision (a), to mean:

"a teacher; an instructional aide, a teacher's aide, or a teacher's assistant employed by any public or private school, who has been trained in the duties imposed by this article, if the school district has so warranted to the State Department of Education; a classified employee of any public school who has been trained in the duties imposed by this article, if the school has so warranted to the State Department of Education; an administrative officer, supervisor of child welfare and attendance, or certificated pupil personnel employee of any public or private school; an administrator of a public or private day camp; a licensee, an administrator, or an employee of a licensed community care or child day care facility; [a] headstart teacher; a licensing worker or licensing evaluator; [a] public assistance worker; an employee of a child care institution including, but not limited to, foster parents, group home personnel and personnel of residential care facilities; a social worker or a probation officer or any person who is an administrator or presenter of, or a counselor in, a child abuse prevention program in any public or private school."  (§ 11165.7, subd. (a), as amended by Stats. 1987, ch. 1459, § 14; emphases added.)

Looking at the words and phrases, and the punctuation (cf., *Wholesale T. Dealers* v. *National Etc. Co.* (1938) 11 Cal.2d 634, 659; *Paris* v. *County of Santa Clara* (1969) 270 Cal.App.2d 691, 699) of subdivision (a) of section 11165.7, we see that the Legislature has now used semicolons to designate distinct subcategories of persons within the overall category of "child care custodians" who must report instances of child abuse.  With respect to those who are involved with students in school they include

    -- teachers;

    -- instructional aides, teacher's aides, or teacher's assistants employed by any public or private school, who have been trained in the duties imposed by the Child Abuse and Neglect Reporting Act, if their school district has so warranted to the State Department of Education;[4]

_____

    [4]Subdivision (b) of section 11165.7 details they type of training contemplated.  The Legislature has provided that

-- classified employees of any public school who have been trained in the duties imposed by the Act, if the school has so warranted to the State Department of Education;

-- administrative officers, supervisors of child welfare and attendance, or certificated pupil personnel employees of any public or private school;

-- headstart teachers; and

-- persons who are administrators or presenters of, or counselors in, a child abuse prevention program in any public or private school.

A ballet teacher at the San Francisco Ballet School would not fall in any of the last four of these subcategories. Neither would he or she fall into the second category --that of aides and assistants, because he or she would have primary responsibility for instruction in his or her ballet class and so would not be an aide or assistant to someone else. And even when he or she appears at a public school, he or she does so as a guest performer and not as a teacher's aide or assistant regularly employed at that school. Thus if the ballet teacher is to fall in any of the subcategories of "child care custodians" who must report child abuse under the Act, it would have to be in the first, as a "teacher". The question thus becomes whether he or she is a "teacher" within the meaning of the Child Abuse and Neglect Reporting Act.

The term "teacher" is not defined in the Child Abuse and Neglect Reporting Act or elsewhere in the Penal Code. Absent that, the word as used in the Act should be interpreted according to its usual, ordinary and generally accepted meaning. (Cf., *People* v. *Craft* (1986) 41 Cal.3d 554, 560; *People* v. *Castro* (1985) 38 Cal.3d 301, 310; *People* v. *Belleci* (1979) 24 Cal.3d 879, 884; *Palos Verdes Faculty Assn* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658; *Great Lakes Properties Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155-156.) There, reference to the dictionary is helpful to understand the common generally accepted meaning of the term. (Cf., *People* v. *Spencer* (1975) 52 Cal.App.3d 563, 565; *People* v. *Medina* (1972) 27 Cal.App.3d 473, 479; *People* v. *Johnson*

_____

"[t]raining in the duties imposed by [the Act] shall include training in child abuse identification and training in child abuse reporting" (§ 11165.7, subd. (b)) and that "[a]s part of that training, school districts shall provide to all employees being trained a written copy of the reporting requirements...." (*Ibid.*) It has also provided that "[s]chool districts which do not train the employees specified in subdivision (a) [of section 11165.7] in the duties of child care custodians under the child abuse reporting laws shall report to the State Department of Education the reasons why this training is not provided." (*Id.*, subd. (c).)

(1957) 147 Cal.App.2d 417, 419.)  Indeed, in a recent Opinion, 70 Ops.Cal.Atty.Gen. 139 (1987), we looked to the dictionary to discern the meaning of the phrase "teaching staff".  (*Id.* at 144.)

Doing so here, we see that the term "teacher" is defined, inter alia, as "one whose occupation is to instruct", as for example "a driving teacher." (Webster's *Third New Intn'l. Dict.* (1971 ed.) at p. 2346.)  And the term "teach", we are told, "is a general term for causing one to acquire knowledge or skill, usu[ally] with the imparting of necessary incidental information and the giving of incidental help and encouragement", as in teaching "boys how to swim."  (*Ibid.*)

There is nothing in the definition of "teacher" or "teach" to suggest that either is in any way limited to particular subjects, knowledge, or skills.  It seems clear that one whose occupation is to instruct others in the skill of dance is a "teacher" in the ordinary use of the word, and we thus consider the ballet teacher here to be a teacher within the common meaning of the term.

We are to construe the Child Abuse and Neglect Reporting Act "according to the fair import of [its] terms, with a view to effect its objects and to promote justice." (Pen. Code, § 4.)  In looking at "the ordinary import of the language used in framing [it]" (*Moyer* v. *Workmen's Comp. Appeals Bd.*, *supra*, 10 Cal.3d 222, 230; *In re Alpine* (1928) 203 Cal. 731, 737) "[a] narrow or restricted meaning should not be given to a word, if it would result in an evasion of the evident purpose of the act, when a permissible, but broader, meaning would prevent the evasion and carry out that purpose." (*In re Reineger* (1920) 184 Cal. 97, 103.)

The purpose of the Reporting Act is to detect and prevent child abuse, an objective in which the State of California has a significant state interest. ( *People* v. *Stritzinger* (1983) 34 Cal.3d 505, 511-512; *People* v. *Stockton Pregnancy Control Medical Clinic, Inc.*, *supra*, 203 Cal.App.3d 225, 241; *Planned Parenthood Affiliates* v. *Van de Kamp*, *supra*, 181 Cal.App.3d 245, 258, 279; 65 Ops.Cal.Atty.Gen. 345, 347, *supra*.)  As noted at the outset, the primary means in which the Act's purpose of protecting victims from child abuse is attained, is to have child abuse agencies promptly notified of its occurrence. (Cf., *People* v. *Stritzinger*, *supra*, at 511-512; *People* v. *Stockton Pregnancy Control Medical Clinic, Inc.*, *supra*, at 241; *Krikorian* v. *Barry*, *supra*, 196 Cal.App.3d 1211, 1216-1217; *Planned Parenthood Affiliates* v. *Van de Kamp*, *supra*, at 258-259, 267, 272, 279; 65 Ops.Cal.Atty.Gen. 345, 347, *supra*.)  To ensure that that occurs, the Legislature has decided that when persons engage in certain callings which bring them into contact with persons under eighteen years of age, they must assume a responsibility to report instances of child abuse that they come to know about or suspect through that contact. (§ 11166,, subd. (a);

cf., *Planned Parenthood Affiliates* v. *Van de Kamp*, *supra*, 181 Cal.App.3d 245, 272.)

Originally, reporting was required only of physicians (former § 11161.5 added by Stats. 1963, ch. 576, § 1, p. 1454), reflecting a belief that they "were in a unique position to discover child abuse and particularly the battered child syndrome." (Comment, <u>Reporting Child Abuse:  When Moral Obligations Fail</u> (1983) Pacific L.J. 189, 213; fn. omitted.).  But over the years the Legislature has expanded the categories of persons who have a duty to report.[5]  (Cf., *Kimberly M.* v. *Los Angeles Unified School Dist.* (1987) 209 Cal.App.3d 1326, 1333; see also, Comment, *supra*, 15 Pacific L.J. at 213-214 & 213 fn. 223.)  School superintendents and principals became mandatory reporters in 1966 (Stats. 1966, First Ex. Sess., ch. 31, § 2, p. 325), and the law was amended in 1971 to include school teachers.  (Stats. 1971, ch. 1729, § 7, p. 3680).  "Thus school teachers and administrative officers [became] designated 'child care custodians' charged with mandatory reporting duties, the violation of which is a misdemeanor."  (*Kimberly M.* v. *Los Angeles Unified School Dist.*, *supra*, 209 Cal.App.3d at 1333.)

If we look at the 1971 amendments to the statute which originally imposed the duty on teachers to report child abuse under the precursor of the Child Abuse and Neglect Reporting Act, former section 11161.5 of the Penal Code, we see that it imposed that duty on "any teacher or [<u>sic</u>, of] any public or private school." (Stats. 1971, ch. 1729, § 7, p. 3680.)[6]  The Legislature thus

---

[5]Over the years the Legislature also lessened the degree of certainty in the basis upon which a report would have to be made and increased the degree of civil and criminal immunity afforded mandatory reporters. (See *Krikorian* v. *Barry*, *supra*, 196 Cal.App.3d 1216-1217.)  This was done to rectify the problem of inadequate child abuse reporting by removing two of the impediments which deterred professionals from reporting suspected cases of child abuse.  (*Ibid.*)

[6]As amended in 1971, section 11161.5 provided in pertinent part that:

"...in any case in which a minor is observed by ... any teacher or [<u>sic</u>, of] any public or private school ... and it appears to the ... teacher ... from observation of the minor that the minor has physical injury or injuries which appear to have been inflicted upon him by other than accidental means by any person, he shall report such fact by telephone and in writing to the local police authority having jurisdiction and to the juvenile probation department.  The report shall state, if known, the name of the minor, his whereabouts and the character and extent of the injuries.  [¶][¶] No person shall incur

clearly included persons who taught in private schools among those who would have a duty to report. But in so doing the Legislature did not impose any restriction or limitation on the types of private school teachers who would have that duty, based either on what they taught, or on the types of private schools at which they might teach. (Cf., *Emmolo* v. *Southern Pacific Co.* (1949) 91 Cal.App.2d 87, 92; 64 Ops.Cal.Atty.Gen. 192, 202 (1981); 62 Ops.Cal.Atty.Gen. 394, 395-396 (1979); 20 Ops.Cal.Atty.Gen. 31, 33 (1952): [effect of the use of the indefinite adjective "any"].) The plain wording of the statute which imposed the reporting duty on "<u>any</u> teacher of <u>any</u> public or private school" thus included among those upon whom it imposed the reporting duty, persons who might teach ballet at a private non-academic ballet school.

In 1980, the child abuse reporting laws were substantially recast and collected into article 2.5. (Stats. 1980, ch. 1071, §§ 1-4, p. 3420; 4 Stats. 1980 [Sum.Dig. SB 781] at p. 333; cf., *Krikorian* v. *Barry*, *supra*, 196 Cal.App.3d 1211, 1216-1217.) The language of former section 11161.5, which imposed the duty to report child abuse on "any teacher ... of any public or private school", was carried through to the definition of "child care custodian", which was now set forth as section 11165, subdivision (h). (Stats. 1980, ch. 1071, § 4, p. 3421.)[7] "Child care custodian was defined to mean--

"<u>a teacher</u>, administrative officer, supervisor of child welfare and attendance, or certificated pupil personnel employee <u>of any public or private school</u>; an administrator of a public or private day camp; a licensed day care worker; an administrator of a community care

---

any civil or criminal liability as a result of making any report authorized by this section." (Stats. 1971, ch. 1729, § 7, *supra*.)

In 1973 the technical correction was made to have the section read "any teacher <u>of</u> any public or private school." (Stats 1973, ch. 1151, § 1, p. 2380; cf., 2 Stats. 1973 [Sum.Dig. SB 398] at p. 182.)

[7]Before 1980, the number of different callings on which section 11161.5 imposed a duty to report child abuse had grown to twenty. (Stats. 1978, ch. 136, § 1, p. 358.) The 1980 amendments repealed that section (Stats. 1980, ch. 1071, § 1, *supra*) and adopted a new section 11165 which defined the mandatory reporters in broad categories --i.e, "child care custodian[s]" (subd. (h)), "medical practitioner[s]" (subd. (i)), "nonmedical practitioner[s]" (subd. (j)) and employees of "child protective agenc[ies]" (subd. (k)). . (*Id.*, § 4, pp. 3421-3422; see, 65 Ops.Cal.Atty.Gen. 345, 346, *supra*; cf., *Planned Parenthood Affiliates* v. *Van de Kamp*, *supra*, 181 Cal.App.3d 245, 258.)

facility licensed to care for children; <u>headstart teacher</u>; public assistance worker; employee of a child care institution including but not limited to, foster parents, group home personnel and personnel of residential care facilities; a social worker or a probation officer." (Former § 11165, subd. (h), as added by Stats. 1980, ch. 1071, § 4, *supra*; emphasis added.)

Section 11165 was repealed in 1987 (Stats. 1987, ch. 1459, § 1) when the definition of "child care custodian" was transferred to newly adopted section 11165.7, where it appears today. (Stats. 1987, ch. 1459, § 14, *supra*.)

However, as it appears today, the definition of "child care custodian" no longer speaks of "a teacher ... of any public or private school" as it did until 1987. It speaks merely of "a teacher" without any qualification. Thus any reason to exclude persons who might teach in particular types of private schools is even less compelling than before. We thus are reinforced in our conclusion that the definition of child care custodian found in section 11165.7 includes persons who teach ballet at a private ballet school.

It has been suggested that our reading of the meaning of "teacher" is too broad. It is pointed out that if the term were indeed so encompassing, there would have been no need to include "headstart teachers" among the occupations listed as "child care custodians" in 1980 (Stats. 1980, ch. 1071, § 4, p. 3421) because the subcategory of "teacher[s] ... of any public or private school" would have already sufficed to include them. That would have made the addition of the subcategory of "headstart teachers" unnecessary, and statutes are supposed to be interpreted to avoid surplusage. (Cf., *City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 55; *California Mfgrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844; *Fields* v. *Eu* (1976) 18 Cal.3d 322, 328.)

The suggestion is that the term "teacher" should only apply to persons who teach in those K-12 public and private schools which a pupil must attend under the Compulsory Education Law. (Cf., fn. 3, *ante*.) After all, those schools and teachers already have broad authority over children and a concomitant duty and responsibility for their care and supervision. (Cf., *Kimberly M.* v. *Los Angeles Unified School Dist.*, *supra*, 209 Cal.App.3d 1326, 1331-1332, 1337-1338). And public school teachers, at least, are specifically given training in the detection of child abuse (Cf., § 11165.7, subds. (b), (c); Ed. Code, § 44691.) As the argument goes, ballet teachers at private ballet schools would not be the type of trained "professionals" upon whose judgment and experience the Legislature relied "to distinguish between abusive and nonabusive situations" when it adopted the Child Abuse and Neglect

Reporting Act. (Cf., *Planned Parenthood Affiliates* v. *Van de Kamp*, *supra*, 181 Cal.App.3d 245, 258-259, 272.)[8]

We reject the position and the associated suggestion that the term "teacher" as used in the Act only applies to persons who teach in public and private K-12 schools. First, we do not view the addition of "headstart teachers" as in any way derogating from the basic meaning of "teachers." That category is used without any qualification, which means any kind of teacher. We believe "headstart teachers" were specifically mentioned as "child care custodians" to make sure that those pre-school teachers were included among those who would have a reporting duty under the Act. Their addition could not have been meant to limit the existing subcategory of "teachers" as "child care custodians" for to turn the argument about: what types of teachers would have then been excluded, because "headstart teachers" were now included in the definition of "child care custodian"?

Without intending to suggest that the meaning of the word "teacher" as found in the Act is without bounds and mandates a reporting duty on any person who happens to impart some knowledge or skill to a child, we do not accept the proffered limitation that it applies only to teachers in K-12 schools. We find nothing in the statutory language of the Child Abuse and Neglect Reporting Act to support such a limitation on the plain meaning of the word "teacher". Second, it bears noting that the particular private Ballet School that has been described does not operate free from all governmental oversight. It is "licensed" by a state agency to operate as a Private Postsecondary Educational Institution in California (cf., Ed. Code, § 93411, subd. (c), *supra*, fn. 2), and its credentials permit it to participate in the Student Tuition Recovery Fund and to apply for other student financial assistance programs. In its operation, it deals with students as young as eight years of age, whom it owes as much a duty of care and supervision as does a public or private K-12 school. (Cf., *Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 518-520; *Kimberly M.* v. *Los Angeles Unified School Dist.*, *supra*, 209

---

[8]In support of this argument attention is also drawn to subdivision (a) of section 11166.5 of the Act which requires "any person who enters into employment on and after January 1, 1985, as a child care custodian, health practitioner, or with a child protective agency, prior to commencing his or her employment, and as a prerequisite to that employment, [to] sign a statement ... to the effect that he or she has knowledge of the [mandatory reporting] provisions of sections 11166. It is claimed that the Legislature would not have meant to impose such a precondition of employment on those in the private sector. This much of the argument we reject on the basis that the definition of child care custodian itself includes persons in the private sector.

Cal.App.3d 1326, 1337 fn. 10; see generally, Comment, *supra*, 15 Pacific L.J. 189, 202-207.)

But most important, we cannot accept the notion that a ballet teacher at the School would not be a type of trained "professional" upon whose judgment and experience the Legislature relied to report known or suspected instances of child abuse. Such a person is professionally in contact with children on a regular and continuous basis (cf., Ed. Code, § 44690), and deals with them in a setting where evidence of child abuse may be uniquely readily apparent. We do not believe that "drawing when appropriate on his or her training and experience" (§ 11166.5, subd. (a)) he or she would be unqualified to make informed judgments regarding child abuse from empirical observation. (Cf., *Planned Parenthood Affiliates* v. *Van de Kamp*, *supra*, 181 Cal.App.3d at 259; Comment, *supra*, 15 Pacific L.J. at p. 214.) In this vein we note that the Act has imposed the obligation to report known or suspected instances of child abuse on other persons in the private sector, such as administrators of private day camps, employees of child day care facilities, and foster parents. (§ 11165.7.) We do not think it incongruous for the Legislature to have intended that ballet teachers at private ballet schools have that duty as well.

The Child Abuse and Neglect Reporting Act imposes a duty on "teachers" to report instances of child abuse that they come to know about or suspect in the course of their professional contact in order that child protective agencies might take appropriate action to protect the children. We are constrained to interpret the language of the Act according to the ordinary meaning of its terms to effect that purpose. Doing so, we conclude that a person who teaches ballet at a private ballet school is a "teacher" and thus a "child care custodian" as defined by the Act, and therefore has a mandatory duty to report instances of child abuse under it.

* * * * *