M. Marvin Berger, J.
The defendant is a male.
When arrested he wore a woman’s wig, dress, makeup and shoes. Following arrest he was searched, and his true sex was discovered.
His accoutrement may mean that he is a transvestite, that is, a person who achieves sexual stimulation from cross dressing, wearing the clothing of the opposite sex (Freedman and Kaplan, Comprehensive Textbook of Psychiatry [1967 ed.], p. 982). Or he may be a transsexual, an individual with the anatomy of one sex, who believes so firmly that he belongs to the other sex that he is obsessed with a compulsion to alter his appearance, social status and even his body to conform to the “ rightful ” gender (Green and Money, Transsexualism and Sex Reassignment [1969], p. 48).
However, Simmons may be a pseudo transvestite “an overt homosexual who uses cross dressing solely for purposes of enticement ” (Socarides, The Overt Homosexual, p. 96).
Finally, the defendant may fit none of the foregoing descriptions and may merely employ dress as a device to facilitate the practice of sodomy for pay.
A hearing was held to determine whether there was probable cause to hold him for trial on three charges.
Two of the accusations are larceny and prostitution — charges not unknown to this court in cases involving males dressed as women.
The third is unusual.
*251 The defendant is charged with criminal impersonation — the language which embodies this item of the complaint reading “ defendant did represent himself to be a female and did offer to engage in a .sexual act with defendant in return for the sum of $10.00 in TJ. S. Currency. ’ ’
The complainant, Luberoff, testified that shortly before he met the defendant, he had taken $80 from his pants pocket from which he had paid for a frankfurter at a Coney Island refreshment stand. As he drove in his automobile toward 15th Street and Surf Avenue, the defendant, dressed in female clothing, approached the car and asked him if he “ wanted some action.” Luberoff invited defendant to enter the vehicle. There, the defendant offered, in Luberoff’s language, “to take care” of him for $10. Luberoff was seemingly interested, for he drove to a nearby dead-end street and parked.
Luberoff never spelled out the nature of the “ action ”, but it may be inferred that Simmons was prepared to engage in fellatio-oral sodomy, the only sexual act which would not disclose Simmon’s gender.
Luberoff testified that as he stopped the car he felt something in his pocket. He withdrew the contents of the pocket and found only three or four $1 bills and a wad of facial tissue. He accused Simmons of theft and demanded return of the money. The defendant denied having stolen the money, whereupon Luberoff flagged down a police car and brought about defendant’s arrest.
Luberoff said defendant did not identify himself and admitted that he had not asked defendant for his name.
Both the complainant and the arresting officer asserted their belief that at the time of arrest they belived that Simmons was a woman.
There were discrepancies between the complaint and the hearing testimony as to the amount of money allegedly stolen by Simmons. No tissue was found on Simmons and the money in his possession fell considerably short of $80. Nevertheless, the court is persuaded that the evidence was sufficient to require holding defendant for trial on charges of larceny and prostitution.
The remaining question is whether the defendant may be held to answer the accusation of criminal impersonation.
The statute reads (Penal Law, § 190.25, subd. 1): “A person is guilty of criminal impersonation when he 1. Impersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another.”
Western civilization has long abhorred transvestism. Thus, in chapter 22, verse 5 of Deuteronomy, we read: ‘ The woman *252 shall not wear that which pertaineth unto a man, neither shall a man put on a woman’s garment: for all that do so are abomination unto the Lord, thy God.”
The anthropologists can perhaps explain whether this intolerance of cross dressing characterizes other societies. Biologists may theorize that in the lower animal species, inability of the male and female of the species to recognize each other’s differences may lead to frustation of the reproductive urge.
We may accept as a fact that apparently the human species is the only one in which true gender can be more or less sue-. cessfully concealed and that transsexuality and transvestism-are not necessarily manifestations of homosexuality (Comprehensive Textbook of Psychiatry, p. 982).
Cross dressing is proscribed by the laws of several States and ¡municipalities (petition for certiorari in Mayes v. Texas in the United States Supreme Court reported' in 42 U. S. Law Week 3354, citing Legal Aspects of Transsexualism, published by Erickson Educational Foundation). Sometimes the language is not aimed directly at transvestism but' at concealment of identity by the wearing of a mask -or disguise. (Oklahoma Stat. tit. 21, § 1301; Penal Code of Cal., § 185.)
A typical ordinance is that found in the Municipal Code of Columbus, Ohio (§ 2343.04), providing: “ No person shall appear upon any public street * * * in a dress not belonging to his or her sex, or in an indecent or lewd dress.”
The State has power to prohibit cross dressing when it is associated with criminal misconduct or bears a real and substantial relation to public health, .safety, morals, or general welfare.
Thus, in City of Columbus v. Zanders (25 Ohio Misc. 144) Judge Jenkins acquitted defendant of violating a municipal ordinance prohibiting public cross dressing by finding absence of criminal intent, although he refused to declare the ordinance unconstitutional. He said (p. 147): “ In spite of changing times and morals, common sense and experience discloses that this ordinance has a real and substantial relation to the public safety and general welfare. There are numerous subjects who would want to change their sex identity in order to perpetrate crimes of homicide, rape, robbery, assault, etc. We hold, therefore, that Section 2343.04 of the Columbus -City 'Code has a redi and substantial relation to the public safety and is therefore constitutional and a valid exercise of the police power.”
In New York, cross dressing was formerly punishable by section 887 of the Code of Criminal Procedure, which defined *253 as a “ vagrant ” (subd. 7) “ A person, who, having his face painted, discolored, covered or concealed, or being otherwise disguised, in a mánner calculated to prevent his being identified, appears in a road, or public highway, or in a field, lot, wood or enclosure.”
The law was repealed with the adoption of. the Criminal Procedure Law (L. 1967, eh. 681).
In an interesting dissent from a decision sustaining a conviction under subdivision 7 of section 887 (People v. Archibald, 58 Misc 2d 862), Mr. Justice Markowitz noted that the prototype of subdivision 7 of section 887 was enacted into law by chapter 3 of the Laws of 1845 to prevent the murder of law enforcement officers by Hudson Valley farmers who were protesting the service of writs to compel rent payments by the farmers. The farmers disguised themselves in women’s clothing or dressed themselves as Indians to avoid identification.
The Legislature, in repealing the law in 1967, may have been impressed with Justice Markowitz’s observation that women are wearing their hair shorter and men’s hair is now being worn longer, that men are using facial makeup and hair dyes and that men’s and women’s clothing styles are becoming increasingly similar.
In any event, today, subdivision 4 of section 240.35 of the Penal Law carries a definition of a loiterer as a person who ‘ ‘ being masked or in any manner disguised by unusual or unnatural attire or facial alteration, loiters, remains or congregates in a public place with other persons so masked or disguised ”.
But the issue in this case is somewhat narrower. Simply stated, it comes down to the question of whether cross dressing is condemned by subdivision 1 of section 190.25 of the Penal Law.
The law was adapted from section 928 of the Penal Law of 1909. That section provided that ‘ ‘ A person who falsely personates another, and, in such assumed character: * * * 5. does any other act, in the course of any action or proceeding, whereby, if it were done by the person falsely personated might result in a civil or criminal liability or might confer a benefit on the offender or another person.” (Emphasis supplied.)
The notes by the staff of the Temporary Commission on Revision of the Penal Law and Criminal Code, as embodied in the 1964 Study Bill, states, as to section 195.25 (later renumbered § 190.25): “ This section, which is a substantial restatement of present law, is designed to replace a variety of existing Penal Law provisions which prohibit the impersonation of public *254 officers (sections 854, 931, 936-B, 1846) and private persons (sections 928, 930, 942, 1278).”
Webster’s Third International Dictionary (1968) defines “ another ” “1: an additional one of the same kind; one more 2: one other than oneself; 3: one of a set or group of unspecified or indefinite things ”.
In People v. Rochester Ry. & Light. Co. (195 N. Y. 102), the court dealt with the question of a corporation’s liability for homicide. Judge Hiscock wrote (p. 107): “ Section 179 of the Penal Code defines homicide as ‘ the killing of one human being by the act, procurement or mission of another. ’ We think that the final word 1 another ’ naturally and clearly means a second or additional member of the same kind or class above referred to by the preceding words, namely, another human being, and that we should not interpret it, as appellant asks us to, as meaning another ‘ person ’ which might then include corporations.” (Cf. People v. Ebasco Servs., 77 Misc 2d 784.)
Adopting the reasoning of the Court of Appeals in People v. Rochester Ry. & Light. Co. (supra), the word “another” as used in subdivision 1 of section 190.25 of the Penal Law would be deemed to relate to the preceding word “ person.”
There are a few clues as to the meaning of “ person ” and “ another ” in the context of authorities interpreting laws forbidding false personation.
Thus, in American Jurisprudence (2d ed., vol. 32, p. 167) we read: “In general, false personation is pretending to be someone or something one is not in order to defraud. False personation is committed by falsely assuming the identity of a particular person or by falsely pretending to be a person with a certain status, with a certain occupation, or of a certain official character.”
And in People v. Vaughn (196 Cal. App. 2d 622, 632-633), it is stated: ‘ “ Impersonate ’ and 1 personate ’ are words in common use. They mean the same thing — to pretend or represent oneself to be another. (Webster’s New Int. Diet., 2d ed.) People v. Maurin, 77 Cal. 436, 439 [19 P. 832], says ‘to personate another person is to assume to be that person. ’ ”
In one of the few New York eases dealing with the meaning of impersonation (Hodecker v. Strickler, 20 App. Div. 245) a wife sued to restrain a woman from holding herself out as the lawful wife of plaintiff’s husband. Plaintiff charged that the defendant’s action constituted a violation of section.562 of the Penal Code which provided that “ a person who falsely personates another, and in such assumed character marries, or pre *255 tends to marry, or to sustain the married relation towards another * * * is punishable by imprisonment * * * for not more than ten years.” In a Per Curiam opinion the court wrote (p. 247): “we think the learned counsel is clearly in error when he asserts that the defendant has violated the provision of the Penal Code just quoted, as it is not claimed that before marrying, or pretending to marry, or prior to sustaining the marriage relation with Hodecker, she falsely personated the plaintiff. Indeed, she never pretended to personate her. She has simply held herself out to the world as Mrs. Frederick Hodecker; and while in dong so, under the circumstances detailed in the complaint, she was undoubtedly guilty of conduct which was morally indefensible and false in fact, she did not thereby bring herself within either the letter or the spirit of the offense denounced by the section in question ”.
In People v. Horkam (109 Col. 177) the defendant was charged with taking a civil service examination for the position of police officer, under the name of another person, thus violating section 338 of chapter 48 of the Colorado Statutes Annotated, which reads in part: “ If any person shall falesly impersonate another, and in such assumed character ’ ’.
Sustaining the sufficiency of the indictment, the court per Mr. Justice Book wrote (p. 181): “To ‘ falsely impersonate ’ . may mean to pretend to be a particular person without lawful authority.”
In State v. Sweat (84 N. M. 416) defendant was convicted of fraudulently signing a credit card sales invoice in violation of section 40A-16-32 of the New Mexico Statutes Annotated, which makes it a felony for ‘ ‘ any person, other than a cardholder * * * who, with intent to defraud, signs the name of another, or of a fictitious person, to a credit card or to a sales slip ”. The defendant argued that the language is ambiguous since it could be read to mean either any name other than the legal name of the person signing the sales slip or any name other than the name on the credit card.
The court wrote (p. 417; Hernandez, J.): “ The key word of course, in the subject phrase, is * another ’.”
After citing the Webster’s Third New International Dictionary definition “1. an additional one of the same kind * * * and 2. one other than, oneself,” the court said (p. 417): “ It is obvious that in this context the only applicable definition is the second * * * It is our opinion and we so conclude that the word has but one meaning and that is that‘ another ’ means other than oneself
*256 The court feels that the defendant cannot be held to answer the charge of criminal impersonation within the meaning of subdivision 1 of section 190.25 of the Penal Law. He will stand trial on the remaining charges.