[Crim. No. 7528. Second Dist., Div. Three. Nov. 1, 1961.]

THE PEOPLE, Respondent, v. GEORGE L. VAUGHN, Appellant.

Dion Morrow, Brock & Fleishman and Stanley Fleishman for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

VALLÉE, J.—A jury convicted defendant of a conspiracy to falsely personate another person and of having falsely personated that person. (Pen. Code, §§ 182, subd. 1, 529, subd. 3.) A new trial was denied. He appeals from the judgment (order granting probation) and the order denying a new trial.

On December 11, 1959, David McGill, a Los Angeles police officer, arrested Minnie Solomon on a charge of possessing marijuana. Defendant, an attorney at law, was engaged to represent her.

Winnie Tobin was Mrs. Solomon's twin sister. On December 23, 1959, the day of the preliminary hearing on the charge against Mrs. Solomon, Mrs. Tobin was sitting in Mrs. Solomon's car, parked across the street from defendant's office, while Mrs. Solomon was in his office. Defendant drove up behind her, saw her sitting in the car, went over to it and looked at her "real funny." Mrs. Tobin said, "I know what you're thinking, but it is not so." Defendant said, "You aren't Minnie Solomon?" She said, "No, I am her twin sister." Defendant "popped his finger" and said, "I know what I am going to do, I am going to switch this thing around." Defendant asked Mrs. Tobin if she was going to court with Mrs. Solomon. She replied in the affirmative.

Defendant went to his office. Mrs. Solomon returned to the car and she, Mrs. Tobin, and Toni Davis went to division 40, then to division 42, of the municipal court. They met defendant in division 40. As they walked to division 42 Mrs. Solomon told defendant the officer who had interrogated her was not present in court. Defendant then dropped behind and talked to Mrs. Tobin. Mrs. Tobin testified: "He told me

that he wanted me to be Minnie Solomon, and that she was going to be Winnie Tobin, whatever happened in Court, or whatever was said, that I was still Minnie Solomon, that is the way he was going to win his case and have it kicked out,'' and she said, ''O.K.''

The preliminary hearing of Mrs. Solomon was partially had that afternoon. Defendant was at the counsel table. He turned around and said, ''Minnie Solomon.'' Mrs. Solomon started to get up. Defendant said, ''No.'' Making a motion for her to sit down, he pointed to Mrs. Tobin. Mrs. Tobin said, ''Me?'' Defendant said, ''Yes.'' Mrs. Tobin again said, ''Me?'' and defendant again said, ''Yes.'' Toni Davis said to Mrs. Tobin, ''Get up, because this is the way he is going to win your sister's case,'' and Mrs. Tobin was going to ''rank it.''

Mrs. Tobin walked to the counsel table. Defendant told her she ''didn't have to say anything, just sit to the right, and just sit there.'' During the course of the hearing on the 23d Officer McGill identified Mrs. Tobin as the person he claimed to have possessed marijuana. The hearing lasted about half an hour on the 23d and was continued to the 24th.

At the conclusion of the hearing on the 23d Mrs. Solomon, Mrs. Tobin, and Toni Davis walked out of the courtroom together, defendant behind them. As they approached the elevator a deputy sheriff in plain clothes who had been sitting in the courtroom came up and said to Mrs. Tobin, ''Are you Minnie Solomon?'' Defendant told her not to answer any questions nor to give her name. Defendant said, ''What do you want with her?'' The officer identified himself, showed his badge, and said, ''She is under arrest.'' Defendant asked, ''What for?'' The officer said, ''A traffic warrant.'' Defendant asked the officer the amount of the bail. The officer said $105.[1] Defendant went over to Mrs. Tobin and told her she ''didn't have anything to worry about, that he would have [her] out in thirty minutes, and that [she] was still Minnie Solomon.'' Mrs. Tobin said, ''O.K.'' The deputy sheriff took Mrs. Tobin to the warrant detail in room 396 of the Hall of Justice where she remained about an hour waiting to see if bail would be posted. She was then booked and photographed as Minnie Solomon and her fingerprints were taken. She wrote ''Minnie Solomon'' on the fingerprint card. While she was in custody defendant telephoned a bail bondsman

---

[1] The warrant stemmed from a citation for two traffic violations, driving without a license in possession, and for failing to appear after the citation had been issued. The bail on these violations was $105.

and told him to post bail for Minnie Solomon. Bail was posted and Mrs. Tobin released.

The preliminary hearing of Minnie Solomon was concluded on December 24. Mrs. Tobin sat at the counsel table on the 24th in place of Mrs. Solomon.

On either the night of the 23d or the morning of the 24th Officer Bachman, Officer McGill's partner, showed McGill a photograph of Mrs. Solomon. McGill then learned he had identified the wrong woman. Before the hearing on the 24th Bachman informed the district attorney that McGill had identified the wrong person. On the 24th the district attorney requested that the "lady appearing in the Courtroom there with the white appearing raincoat" be brought up to defense counsel and asked to remove her hat, and that "this particular female person sitting next to counsel" also remove her hat. He stated: "I have a question as to which particular person is the true defendant, and I would like to have this particular person identified, the female sitting next to counsel by her true name, if I may." Defendant's objection was sustained. On resuming the stand on the 24th McGill testified he then believed the lady sitting in the rear of the courtroom was Minnie Solomon. Bachman testified on the 24th he knew Minnie Solomon was sitting in the spectator section of the courtroom and Winnie Tobin at the counsel table.

After the hearing on the 24th defendant talked to Mrs. Tobin. Mrs. Tobin testified: "Well, it was still the three of us together, and Mr. Vaughn was standing outside of Division 42 right by the door, and I walked up to him, I said, 'Mr. Vaughn,' I said, 'They took my picture and my fingerprints and I signed my sister's name.' So he said, 'Oh, that is all right,' he said, 'I will have those fingerprints pulled and brought into the Courtroom to prove that you are not Minnie, that you are Winnie,' and that I didn't have anything to worry about. So I said, 'O.K.' "

On his arrest, three officers had a conversation with defendant. Defendant stated, "I deny that I substituted Winnie for Minnie." He said he had no idea which girl, Minnie or Winnie, the deputy sheriff took into custody on the warrant. He said the first time he had any question of the identification of the girl at the counsel table was when he saw Officer McGill hesitate on the witness stand. One of the officers asked him, "Did you know which of the girls was sitting beside you both days of the preliminary hearing?" Defendant answered, "I assumed it was the defendant." One of the officers asked,

"As far as you were concerned, during both days of the preliminary hearing until some question of identity was raised, the right person was seated beside you at the table?" Defendant answered, "As far as I was concerned."

Defendant testified. He said, "I didn't substitute one for the other because both of them were in court, so I can't say that answer to that question because there was no substitution." The only reason for having Mrs. Tobin sit at the counsel table was to test the reliability of the police officer. He did not know a traffic warrant was outstanding for Mrs. Solomon's arrest. He knew from prior experience that a person arrested for a traffic violation could be immediately released from "room 396" on the posting of bail. A deputy sheriff assigned to the warrant detail in room 396 testified that persons arrested for traffic violations and first brought to his room would be released without any booking if he were notified within a limited period of time that cash bail had been posted. Defendant testified he permitted Mrs. Tobin to go with the officer because he was suspicious of him and his possible connection with Officer Bachman who had left in the middle of the preliminary hearing that day without returning, and because the officer's attitude indicated he would brook no interference with the arrest of Mrs. Tobin. He felt he was not under a duty to make disclosures, and was under a duty not to interfere.

Defendant admitted the conversation with the officers the day he was arrested and that he had told them he had assumed the real defendant was sitting at his side. He said everything he told the officers "was a lie." He conceded he had disclaimed any knowledge of the substitution of Mrs. Tobin for Mrs. Solomon. His explanation of lying to the officers was that he was indignant at the manner in which they had arbitrarily arrested and abused him; instead of booking him properly, they insisted on first interrogating and threatening him; he felt the officers were trying to get something to use at the trial to buttress their case against Mrs. Solomon so he decided to give them nothing under compulsion that would relieve them from the mistake they probably had discovered Officer McGill had made in his erroneous identification at the preliminary hearing.

The case of the People at the trial and here is not based on the conduct of defendant in the courtroom.[2] It is predi-

---

[2] The court gave these instructions:

"The jury is instructed that there is nothing unlawful in a defendant not sitting at the counsel table during a preliminary proceeding or during

cated on his conduct in allowing Mrs. Tobin to be taken into custody as Mrs. Solomon.

The first assignment of error is that the evidence does not establish a violation of subdivision 3 of section 529 of the Penal Code or a conspiracy to commit the offense. It is argued the statute condemns only such personation which injures the person falsely personated or which enables the personator or some third person *other than the person personated* to benefit therefrom.

Penal Code, section 529, subdivision 3, provides: "Every person who falsely personates another in either his private or official capacity, and in such assumed character, either: . . .

"3. Does any other act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person. . . ."

The point is untenable. The statute is explicit that a violation occurs if the person does any act whereby any benefit might accrue "to any other person," i.e., to any person other than "the party personating." We cannot, under any rule of statutory construction, read into a statute a meaning different from the wording of the act. The word "any" has been held to mean "all" and "every." (*Davidson* v. *Dallas,* 8 Cal. 227, 239; *Powell* v. *Allan,* 70 Cal.App. 663, 668 [234 P. 339]; *Coelho* v. *Truckell,* 9 Cal.App.2d 47, 59 [48 P.2d 697]; *Emmolo* v. *Southern Pacific Co.,* 91 Cal.App.2d 87, 91-92 [204 P.2d 427].) The word "other" refers only to the words "the party personating." The phrase "any other person" can refer only to any person other than the person doing the personating. The words "or to any other person" are generic and necessarily include all persons other than the person doing the personating. Giving to section 529, subdivision 3, the usual and ordinary construction that the words imply, we think it manifest that any benefit which might accrue "to any other person" includes Mrs. Solomon. (*Commonwealth*

a trial; and the jury is further instructed that it is lawful for someone other than the defendant or the accused to sit at counsel table during such proceedings, subject to the discretion of the Court."

"The jury is instructed that one of the essential safeguards of due process of law is the cross-examination of accusing witnesses in a criminal case and an attorney for the defendant may, and indeed, has the duty, to cross-examine prosecuting witnesses vigorously and to test the credibility and reliability of their testimony in every respect."

*Title-Insurance & Trust Co.* v. *Ellis,* 192 Pa. 321 [43 A. 1034, 1035] ; *Sodowsky* v. *Sodowsky,* 51 Okla. 689 [152 P. 390, 393].)

Defendant contends Penal Code, section 529, subdivision 3, "is directed at those acts which cause the individual personated some material pecuniary harm or liability, or which result in the accrual of some material or pecuniary gain or some tangible advantage to the personator or other person. The statute operates in the area of cheats and frauds with respect to property, the infliction of monetary harm or material disadvantage on private persons for private material gain or advantage by the wrongdoer or wrongdoers." The contention is based on the fact that section 529 is in title 13 of part I of the Penal Code headed "Crimes Against Property." Chapter 8 of title 13 in which section 529 appears is headed "False Personation and Cheats."

In addition to section 529, chapter 8 contains statutes prohibiting marriage under false personation (§ 528), unauthorized use of a vehicle belonging to another (§ 537c), purchase or possession of articles from which the serial number or identification mark has been removed (§ 537e), unauthorized wearing or use of a badge or garb of a secret society (§ 538b), personation of a police officer (§ 538d), personation of a member of a fire department (§ 538e). Section 529 is not limited to pecuniary or material gain because of the title heading. (*People* v. *Trout,* 137 Cal.App.2d 794 [291 P.2d 83].)

Further, the word "benefit" as used in the statute is not limited to pecuniary or material gain. The word "benefit" denotes any form of advantage. (*Atchison, etc. Ry. Co.* v. *Kings County Water Dist.,* 47 Cal.2d 140, 144 [302 P.2d 1] ; *Palaske* v. *City of Long Beach,* 93 Cal.App.2d 120, 127 [208 P.2d 764].)

It is argued proof of a specific intent is lacking. Defendant told Mrs. Tobin he was "going to switch this around." When court adjourned on December 23 and the officer approached and said, "Minnie Solomon," Mrs. Solomon stepped forward and defendant pushed her back. When the officer said Mrs. Solomon was being arrested on a traffic warrant, defendant told Mrs. Tobin to go with the officer and to say nothing, not even give her name. He then arranged bail for Mrs. Tobin and told the bail bondsman to bail out "Minnie Solomon." Defendant testified he lied to the officers. He admitted telling them he had no idea which girl the officer took into custody and that he told them he assumed the girl next to him was Minnie Solomon.

The jury could reasonably conclude defendant had the specific intent to do an act whereby a benefit *might* accrue to Mrs. Solomon and that he thereby aided and abetted Mrs. Tobin in personating Mrs. Solomon. The deception might have resulted in Mrs. Solomon's escaping a prison term for the alleged offense of possessing marijuana. The fact that the encounter on December 23 outside the courtroom occurred in the middle of the preliminary and that it lasted only a few minutes does not negative that an offense was committed. Whether defendant did not intend to do anything more than maintain his ability to test the credibility of the prosecution witnesses during the remaining time which the preliminary hearing might consume, as he asserts, was a question of fact for the jury.

The evidence is also ample to sustain the conviction of a conspiracy between defendant and Mrs. Tobin to personate Mrs. Solomon. The gist of a conspiracy is an unlawful agreement to commit an offense and an overt act done in furtherance of the agreement. (*People* v. *Curtis*, 106 Cal.App.2d 321, 325 [235 P.2d 51].) The evidence clearly shows such an agreement. There is no question but that Mrs. Tobin did personate Mrs. Solomon in allowing herself to be taken to jail and that she did so pursuant to agreement with defendant. That the agreement resulted in a benefit to Mrs. Solomon is obvious.

Defendant asserts Penal Code, section 529, subdivision 3, is unconstitutional as applied to the facts at bar. It is urged application "of the statute leaves the standards of guilt so vague, indefinite and ambiguous as to offend the requirements of due process."

" 'To comply with the constitutional requirement of due process of law, the crime for which a defendant is being prosecuted must be clearly defined, but it is only necessary that the words used in the statute be well enough known to enable those persons within its reach to understand and correctly apply them. "To make a statute sufficiently certain to comply with constitutional requirements it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited." [Citation.] Although higher standards of certainty will be required of penal than of civil statutes [citation], a statute is sufficiently certain if it employs words of long usage or with a common law meaning, "notwithstanding an element of degree in the definition as to which estimates might differ." [Citations.] For example,

the courts have upheld statutes employing such terms as: "to make diligent effort to find the owner" [citation]; "unreasonable speed" [citation]; "unjustifiable physical pain or mental suffering" [citation]; "practice law" [citation]; and "to the annoyance of any other person" [citation].' (*Lorenson* v. *Superior Court,* 35 Cal.2d 49, 60 [216 P.2d 859].)

'Where a statute contains a reasonably adequate disclosure of the legislative intent regarding an evil to be combatted in language giving fair notice of the practices to be avoided, a court will be slow to say that such a statute is too indefinite to be enforced. The complexities of the social problems dealt with by the Legislature require that a practical construction be given to the language employed by the draftsmen of legislation lest their purposes be too easily nullified by overrefined inquiries into the meanings of words.

"Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible." [Citation.] The use of words of general meaning is the essence of our code system.' (*People* v. *Deibert,* 117 Cal.App.2d 410, 418 [256 P.2d 355].)

That is certain which can be made certain by simple reference to the dictionary. (*Cozad* v. *Board of Chiropractic Examiners,* 153 Cal.App.2d 249, 257 [314 P.2d 500].)"[3] (*Sultan Turkish Bath, Inc.* v. *Board of Police Comrs.,* 169 Cal.App.2d 188, 199 [337 P.2d 203].)

"Impersonate" and "personate" are words in common use. They mean the same thing—to pretend or represent oneself to be another. (Webster's New Inter. Dict., 2d ed.) *People* v. *Maurin,* 77 Cal. 436, 439 [19 P. 832], says "[t]o per-

---

[3]See *Brecheen* v. *Riley,* 187 Cal. 121 [200 P. 1042], in which the standard "guilty of any act 'which constitutes dishonest dealing' " was held adequate; *Dominguez Land Corp.* v. *Daugherty,* 196 Cal. 468, 483-487 [238 P. 703], Commissioner of Corporations determining whether directors of a corporation shall be permitted to pay dividends from other than surplus profits; *Agricultural Prorate Com.* v. *Superior Court,* 5 Cal. 2d 550 [55 P.2d 495], committee to determine the method, manner, and extent of prorating agricultural products; *Keck* v. *Superior Court,* 109 Cal.App. 251 [293 P. 128], suspend or revoke a driver's license if specified officers find an operator is a reckless, negligent, or incompetent driver; *Redevelopment Agency* v. *Hayes,* 122 Cal.App.2d 777, 806 [266 P.2d 105], agency given power to determine whether an area is blighted; *Drucker* v. *State Board of Med. Examiners,* 143 Cal.App.2d 702 [300 P.2d 197], words "furnish," "employ," and "maintain" have certain and definite meanings in section 2556 of Business and Professions Code; *Kershaw* v. *Department of Alcoholic Beverage Control,* 155 Cal.App.2d 544, 549 [318 P.2d 494], "sex pervert." Also see *People* v. *Daniel,* 168 Cal.App.2d Supp. 788 [337 P.2d 247], in which a number of illustrations of language held to establish a sufficient standard are given.

sonate another person is to assume to be that person." "Benefit" is also a word in common use. One of its meanings is "To gain advantage." (Webster's New Inter. Dict., 2d ed.) The statute establishes a sufficiently clear and ascertainable standard. (See *In re Cregler,* 56 Cal. 2d 308 [14 Cal.Rptr. 289, 363 P.2d 305].)

 The court instructed the jury in the language of the statute.[4] It is apparently contended the giving of the instruction was error because the jury would have difficulty in understanding the statute without guidance from the court. The point is not well taken. The instruction given is clear, unambiguous, and readily understood.

 Defendant requested and the court refused to give this instruction: "The jury is instructed that the phrase 'or to any other person' as contained in Subdv. (3) of § 529 of the Penal Code does not apply to Minnie Lois Solomon under the facts of this case. That is, the said statute only deals with an injury caused to the person falsely personated and with any benefit which may accrue to the person falsely personating, or to any other person benefiting except the person falsely personated."

Defendant asserts error. There was no error. It would have been error to have given the instruction. As we have said, the phrase "whereby any benefit might accrue to the party personating, or to any other person" applies to Mrs. Solomon. The wording of the instruction to the effect that the statute "does not apply to Minnie Lois Solomon" and that it only deals with any benefit which may accrue to any other person "except the person falsely personated" is clearly erroneous. (*People* v. *Horkans,* 109 Colo. 177 [123 P.2d 824, 826].)

The judgment and order denying a new trial are affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied November 21, 1961, and appellant's petition for a hearing by the Supreme Court was denied January 9, 1962.

---

[4]The instruction read: "It is unlawful for any person to falsely personate another either in his private or official capacity, and in such assumed character does any act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person."