99 Cal.Rptr.2d 779 (2000)
24 Cal.4th 200
6 P.3d 700
The PEOPLE, Plaintiff and Respondent,
v.
Russell Ray RATHERT, Jr., Defendant and Appellant.
No. S070946.
Supreme Court of California.
August 28, 2000.
*780 Richard Jay Moller, Redway, under appointment by the Supreme Court, for Defendant and Appellant.
Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Carol Wendelin Pollack, Assistant Attorney General, Lance E. Winters, Marc E. Turchin, Victoria Bedrossian, Susan D. Martynec and Deborah J. Chuang, Deputy Attorneys General, for Plaintiff and Respondent.
WERDEGAR, J.
In this case we define the mental state necessary to violate Penal Code[1] section 529, paragraph 3 (hereafter sometimes paragraph 3), prohibiting false personation. The Court of Appeal held the statute requires an intent to subject the impersonated individual to liability for suit or prosecution, or to secure a benefit for any person. It therefore reversed defendant's burglary conviction, which was predicated on entry with the intent to commit the underlying felony of false personation, because the pertinent jury instruction prejudicially omitted the required intent element.
We conclude section 529, paragraph 3, by its terms, is violated when one intentionally falsely personates another and, in such assumed character, does any act that might cause the liability or benefit described in the statute. Paragraph 3, in other words, requires the existence of no state of mind or criminal intent beyond that plainly expressed on the face of the statute. Accordingly, we reverse the decision of the Court of Appeal.

*781 FACTS
About 9:35 p.m. on March 22, 1996, defendant entered a Lucky supermarket in Rancho Palos Verdes. He approached store clerk Carlos Mariscal with a check and a driver's license, asking Mariscal "if it was okay to cash the check before [defendant] started getting groceries" and stating he wanted the check approved by the manager. The Talcro Financial Services cheek was made out to one Chris Laughrey and endorsed by Laughrey. Recognizing that Laughrey, the person pictured on the license, was obviously not defendant, Mariscal called the manager, Sergio Montez, who told defendant he would have to verify the check. Defendant acquiesced and said he would remain there and buy some groceries.
Montez recognized the check as similar to one he had refused several days earlier. Another Lucky supermarket had then cashed that check and later discovered it was invalid. Both checks had been drawn on a closed account.
Montez asked Michael Gutierrez, another employee, to keep an eye on defendant. Meanwhile, Montez telephoned the other Lucky store to verify that the earlier check was of the same kind as the one defendant was attempting to cash. He then called the police.
Defendant abruptly left the store for the parking lot when the police drove up. He entered an El Camino car on the passenger's side. Gutierrez waved down Deputy Sheriff Chris Knox, who had been patrolling the Lucky parking lot in his vehicle, and told Knox, "That's him." Knox followed the El Camino as it drove out of the parking lot, stopped it, and detained defendant and the driver. Defendant gave Knox two false names.
Defendant testified that, on the day he was arrested, he had met his friend, Cherise Hartley, at her house in San Pedro. Hartley asked him if he would cash a check for her, as she needed money to pay for food, diapers and rent. Chris Laughrey, the father of her child, had given her the check and permission to cash it, but was then in a rehabilitation center. She showed defendant a previously endorsed check and Laughrey's driver's license. Hartley told defendant, and he believed, the check was good. He agreed to help her, and they drove to the Lucky store. His account of what happened there generally accorded with the testimony of the store personnel, except he denied leaving the store because of the arrival of the police. Defendant testified he never said he was Chris Laughrey, but he admitted saying he had no other identification and that he intended to pass himself off as Laughrey in order to cash the check. When the manager took the check, saying he would have to verify it, defendant felt something was not quite right, so he went outside to ask Hartley if there was a problem with the check. She told him to get into the car and "forget it." When arrested, defendant gave a false name because he was then on parole and would have been "assumed guilty of anything."
Defendant was charged with forgery (§ 470), possession of a completed check with intent to defraud (§ 475, subd. (a)) and second degree burglary (§ 459). It was specially alleged he had previously been convicted of three serious or violent felonies (§§ 1170.12, subds.(a)-(d), 667, subds. (b)-(i)) and had served three prior prison terms (§ 667.5, subd. (b)).
The prosecution presented four alternative theories of burglary: entering a building (1) with the specific intent to steal, (2) with the specific intent to commit forgery, (3) to commit the crime of possession of a completed check with the specific intent to defraud, or (4) to falsely personate another in violation of section 529, paragraph 3. The jury convicted defendant of second degree burglary on the false personation theory,[2] acquitted him of forgery, and *782 failed to reach a verdict on the charge of possession of a completed check with the intent to defraud. It found true the special allegations. The trial court denied defendant's motions for new trial, to strike the prior convictions, and to reduce the charge to a misdemeanor. It imposed a sentence of 25 years to life imprisonment.

DISCUSSION
In a burglary prosecution, complete and accurate jury instructions include the definition of each felony the defendant is alleged to have intended to commit upon entry into the burglarized structure. (See People v. Failla (1966) 64 Cal.2d 560, 564, 51 Cal.Rptr. 103, 414 P.2d 39; cf. People v. Prettyman (1996) 14 Cal.4th 248, 266-267, 58 Cal.Rptr.2d 827, 926 P.2d 1013 [similar instructional requirement obtains under natural and probable consequences doctrine].) Thus, in order to convict defendant of burglary on the theory that he entered the Lucky store with the intent to commit false personation, the jury should have been provided with a correct definition of false personation.
In assessing whether the jury in this case was correctly instructed, we first turn to the statute defining the offense of false personation. As relevant here, section 529 provides: "Every person who falsely personates another in either his private or official capacity, and in such assumed character ...: [¶] ... [¶] 3. Does any other act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person; [¶] Is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment." The statutory language first appeared in the Statutes of 1850, chapter 99, section 90, page 241, apparently having been derived from the New York Revised Statutes of 1828 (2 N.Y. Rev. Stats. (1828) 676, § 48). The California Legislature codified section 529 in 1872 and has not changed it in any relevant respect since that time. Unsurprisingly, given the antiquity of the statute, there is no available legislative history to assist us in its interpretation.
At issue here is whether, as defendant urges, paragraph 3 of section 529 requires, for conviction, that defendant impersonated Chris Laughrey, specifically intending to cause Laughrey to become liable to any suit or prosecution or to pay any sum of money, or specifically intending to benefit himself or another. The Court of Appeal so construed the statute and, because the jury was not so instructed, reversed defendant's burglary conviction.[3]
"Specific and general intent," we have cautioned, "have been notoriously difficult terms to define and apply...." (People v. Hood (1969) 1 Cal.3d 444, 456, 82 Cal.Rptr. 618, 462 P.2d 370.) The standard formulation of the two concepts appears in Hood: "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." (Id. at pp. 456-457, 82 Cal.Rptr. 618, 462 P.2d 370.)
Resolution of this case does not require us to fit the offense of false personation into either the specific or the general intent category. Such classification *783 of offenses is necessary "only when the court must determine whether a defense of voluntary intoxication or mental disease, defect, or disorder is available; whether evidence thereon is admissible; or whether appropriate jury instructions are thereby required. [Citation.]" (People v. Hering (1999) 20 Cal.4th 440, 446-447, 84 Cal.Rptr.2d 839, 976 P.2d 210.) In this case, defendant does not defend on any such ground; rather, "[he] simply contends that in addition to instructions that tracked the statutory language, the trial court should have included one on specific intent.... This case aptly illustrates the general principle thatother than circumstances involving a mental state defense `the characterization of a crime as one of specific intent [or general intent] has little meaningful significance in instructing a jury. The critical issue is the accurate description of the state of mind required for the particular crime.' [Citations.]" (Id. at p. 447, 84 Cal.Rptr.2d 839, 976 P.2d 210, second bracketed text added in Hering.)
Section 529, paragraph 3 does not explicitly require that a defendant who impersonates another specifically intend to cause the latter to become liable to any suit or prosecution or to pay any sum of money, or specifically intend to benefit defendant himself or another person. The Legislature included in paragraph 3 none of the language typically denoting specific intent, such as "with the intent that" or "for the purpose of." (See People v. Hering, supra, 20 Cal.4th at p. 446, 84 Cal. Rptr.2d 839, 976 P.2d 210.) To the contrary, paragraph 3 is framed in language reasonably susceptible of only one interpretation: that the Legislature sought to deter and to punish all acts by an impersonator that might result in a liability or a benefit, whether or not such a consequence was intended or even foreseen. No fewer than seven times does the word "any" appear in the statute: "[A]ny other act ... in any event ... any suit or prosecution ... any sum of money ... any charge ... any benefit ... any other person." (§ 529, par. 3, italics added.) The impersonator's act, moreover, is criminal provided it might result in any such consequence; no higher degree of probability is required.
Despite the absence of any language restricting section 529, paragraph 3 to acts undertaken by impersonators with an intent to cause a benefit or liability as described therein, the Court of Appeal in People v. Robertson (1990) 223 Cal.App.3d 1277, 273 Cal.Rptr. 209, opined that such an intent is required for a conviction of false personation. The defendant in Robertson was arrested in August 1986 for stealing a truck. On arrest he gave a false name, that of his brother, and continued to masquerade as his brother throughout his arraignment and release on his own recognizance. He failed to appear at a scheduled hearing, whereupon a bench warrant was issued. The brother was later arrested in Texas on the warrant and extradited to California, where criminal proceedings were instituted. The brother was found incompetent to stand trial and was committed to Atascadero State Hospital, where he remained incarcerated for more than a year before hospital authorities notified county officials that they did not believe the brother was the person arrested in August 1986. Ultimately the deception was discovered, and the defendant was identified through fingerprint evidence. The sole issue on appeal in Robertson was whether section 529, paragraph 3 criminalizing false personation, was preempted by a more specific statute, section 148.9, subdivision (a), which prohibits falsely identifying oneself to a peace officer during a lawful detention. In the course of comparing the elements of the two offenses, the Court of Appeal stated: "[F]or a conviction based on section 529, [paragraph] 3, the prosecution must establish that at the time of the offense the defendant had the specific intent to commit that crime; or, in the words of the court here, he falsely personated another with the specific intent to obtain a benefit for himself or to cause another to become liable for prosecution or pay a sum of money." *784 (People v. Robertson, supra, 223 Cal. App.3d at pp. 1281-1282, 273 Cal.Rptr. 209.) For this proposition, the Robertson court cited only People v. Vaughn (1961) 196 Cal.App.2d 622, 630-631, 16 Cal.Rptr. 711.
Whether Vaughn is properly read as requiring a specific intent to obtain a benefit or subject another to liability, however, is questionable. Vaughn arose out of the prosecution of a criminal defense attorney who, to test the reliability of a police officer's identification of his client, caused the client's twin sister to pose as the client during a court hearing. He was convicted of violating section 529, paragraph 3 on an aiding and abetting theory, for which the prosecution was required to prove he acted "with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." (People v. Beeman (1984) 35 Cal.3d 547, 560, 199 Cal.Rptr. 60, 674 P.2d 1318, italics omitted; see People v. Mendoza (1998) 18 Cal.4th 1114, 1131, 77 Cal. Rptr.2d 428, 959 P.2d 735 [aider and abettor's state of mind is a "`required specific intent'" for which evidence of voluntary intoxication is admissible pursuant to section 22].) In affirming the conviction, the Court of Appeal held "[t]he jury could reasonably conclude defendant had the specific intent to do an act whereby a benefit might accrue to [his client] and that he thereby aided and abetted [his client's sister] in personating [his client]." (People v. Vaughn, supra, 196 Cal.App.2d at p. 631, 16 Cal.Rptr. 711, italics in original.) Significantly, the Court of Appeal found no error in instructional language taken almost verbatim from section 529, paragraph 3, which, as we have seen, contains no explicit reference to an intent to subject another to liability or to obtain a benefit. (People v. Vaughn, supra, at p. 633, 16 Cal.Rptr. 711.) Vaughn, therefore, is doubtful authority for the proposition that false personation is a specific intent crime; the Robertson court uncritically read Vaughn's description of the standard of aider and abettor liability, as applied to paragraph 3, into the definition of the crime itself.
Defendant argues that, when section 529, paragraph 3 is considered in the context of its surrounding statutes (see People v. Simon (1995) 9 Cal.4th 493, 514, 37 Cal.Rptr.2d 278, 886 P.2d 1271), the section obviously contains a requirement of a specific intent to cause another person harm or wrongfully to benefit someone. This is because virtually all other impersonation statutes, according to defendant, include an element of specific intent to defraud, or some similar mens rea, or some wrongful conduct in addition to the impersonation. (E.g., §§ 528 [marriage under false personation], 530 [receiving money or property under false personation]; see also § 146a, subd. (b) [impersonating a state public officer, investigator or inspector]; Veh.Code, § 27 [impersonating a California Highway Patrol officer].) We find defendant's argument unpersuasive. The various statutes prohibiting different types of impersonations neither appear to comprise a statutory scheme governing false personation generally (cf. People v. Simon, supra, 9 Cal.4th at p. 514, 37 Cal.Rptr.2d 278, 886 P.2d 1271) nor invariably contain a specific intent requirement. To the extent, moreover, that other statutes include a specific intent element, the omission of such an element in section 529 weighs in favor of our interpretation.
Defendant may be understood to argue, more broadly, that, whatever the actual language of section 529, paragraph 3, for this court not to construe the statute as requiring a specific intent to cause the described liability or benefit would be unfair, given that other impersonation statutes expressly requiring such intent carry only misdemeanor penalties. (E.g., §§ 532b [impersonating a veteran or ex-serviceman], 538d [impersonating a peace officer], 538e [impersonating a member of a fire department or a state fire marshal], 538f [impersonating a public utility employee].) His argument, of course, is better addressed to the Legislature. Given, *785 moreover, the potentially drastic consequences that may befall an impersonated individual in the circumstances described by the statute, including serious damage to his or her financial circumstances or personal freedom, we cannot say that felony punishment is necessarily too harsh.
In any event, section 529 is punishable as either a felony or a misdemeanor, and trial courts in the course of sentencing violators of the statute may exercise whatever discretion they otherwise possess in determining the appropriate penalty. (E.g., People v. Superior Court (Alvarez) (1997) 14 Cal.4th 968, 60 Cal.Rptr.2d 93, 928 P.2d 1171 [discretion to reduce "wobblers" to misdemeanors]; People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628 [discretion to strike priors].) In the present case, after the jury found defendant guilty of second degree burglary on the theory he entered the Lucky store with the intent to commit false personation, and found true the allegation he had previously been convicted of three prior serious felonies, the trial court denied defendant's motions to strike the priors or reduce the charge to a misdemeanor. Defendant, therefore, has availed himself (albeit unsuccessfully) of the opportunity to seek a favorable exercise of the sentencer's discretion.
Defendant urges that the false personation statute must be read to contain a specific intent element in order to avoid criminalizing innocent behavior. Defendant's brief recites a variety of scenarios in which a person utterly free from criminal intent could be subject to prosecution for engaging in some conduct that might confer a benefit on him or her while impersonating another. Defendant, however, cites no instance in the history of this state of any person's being prosecuted for, e.g., trick-or-treating or attending a costume party, and we are aware of none. The ancient customs of masquerade and trick-or-treating antedate, and have survived, the enactment of section 529. The statute clearly was not designed to eliminate these innocuous practices.
Indeed, early decisions by this court strongly suggest that the offense of false personation requires a deliberate effort to pass oneself off as another. (See People v. Maurin (1888) 77 Cal. 436, 439, 19 P. 832 [reversing a conviction under section 529 in the absence of evidence defendant "pretended to any human being" that he was another]; cf. People v. Sprague (1879) 53 Cal. 491, 494 [interpreting "false" as used in Code of Civil Procedure, former section 2061, as meaning "untrue, not as the result of mistake or inadvertence, but willfully and with the design to deceive"]; see also 1 Bouvier's Law Diet. (1897 ed.) p. 755 ["Applied to the intentional act of a responsible being," the word "false" "implies a purpose to deceive...."].) The innocent examples proffered by defendant differ from the criminal offense with which we are concerned, in that they involve acts of transparent impersonation, highlightingrather than concealingthe impersonator's artifice.
Defendant further argues that the potentially harsh penalties for false personation compel us to infer a specific intent requirement, as the offense is not of a "public welfare" type such as would justify dispensing with a mental element. (See United States v. X-Citement Video, Inc. (1994) 513 U.S. 64, 71, 115 S.Ct. 464, 130 L.Ed.2d 372; Staples v. United States (1994) 511 U.S. 600, 606-607, 616-617, 114 S.Ct. 1793, 128 L.Ed.2d 608; People v. Simon, supra, 9 Cal.4th at pp. 509, fn. 13, 519-522, 37 Cal.Rptr.2d 278, 886 P.2d 1271; In re Jorge M. (2000) 23 Cal.4th 866, 98 Cal.Rptr.2d 466, 4 P.3d 297.) As we have seen, however, section 529, paragraph 3, unlike public welfare offenses, does not dispense with a mental element. One does not violate paragraph 3 merely by happening to resemble another person. Rather, one must intentionally engage in a deception that may fairly be described as noninnocent behavior, even if, in some instances, it might not stem from an evil motive.
Defendant contends that to apply our ruling to him would violate the due *786 process and ex post facto clauses of the state and federal Constitutions. We disagree. "A statute `"which makes more burdensome the punishment for a crime, after its commission,"' violates article I, section 9, clause 3, of the United States Constitution as an ex post facto determination of criminal liability [citations], as well as its California counterpart, article I, section 9 of the state Constitution [citation]. Correspondingly, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates in the same manner as an ex post facto law. [Citations.]" (People v. Davis (1994) 7 Cal.4th 797, 811, 30 Cal.Rptr.2d 50, 872 P.2d 591.) Courts violate constitutional due process guarantees when they impose unexpected criminal penalties by construing existing laws in a manner that the accused could not have foreseen at the time of the alleged criminal conduct. (United States v. Lanier (1997) 520 U.S. 259, 266-267, 117 S.Ct. 1219, 137 L.Ed.2d 432; Bowie v. City of Columbia (1964) 378 U.S. 347, 353, 84 S.Ct. 1697, 12 L.Ed.2d 894; People v. Blakeley (2000) 23 Cal.4th 82, 91-92, 96 Cal.Rptr.2d 451, 999 P.2d 675.)
We conclude that our reading of paragraph 3 cannot fairly be described as an unforeseeable enlargement of criminal liability, notwithstanding the error of the court below. As we have seen, the statute plainly encompasses an impersonator's commission of any act that might result in a liability. That one appellate decision (i.e., People v. Robertson, supra, 223 Cal. App.3d 1277, 273 Cal.Rptr. 209) erroneously conflated another's (i.e., People v. Vaughn, supra, 196 Cal.App.2d 622, 16 Cal.Rptr. 711) description of the mens rea of an aider and abettor of false personation with the elements of the crime itself did not generate such a firmly established rule as to erect a constitutional bar to our applying the present decision to this defendant. (See People v. Sobiek (1973) 30 Cal. App.3d 458, 476,106 Cal.Rptr. 519.)

DISPOSITION
The judgment of the Court of Appeal is reversed.
GEORGE, C.J., MOSK, J, BAXTER, J., and CHIN, J., concur.
Concurring Opinion by KENNARD, J.
I concur in the judgment affirming defendant's conviction of second degree burglary (Pen.Code, § 459), which was tried on the theory that he entered a store with the intent to commit a felony offense, falsely impersonating another for gain (Pen.Code, § 529, par. 3).[1] Together with his companion, Cherise Hartley, defendant went to a supermarket, where he attempted to pass himself off to store personnel as one Chris Laughrey, the father of Hartley's child, in order to cash a check made out to, and endorsed with the name, Chris Laughrey.
As relevant here, the crime of burglary entails entering a store with the specific intent to commit therein "any felony." (§ 459.) A trial court in instructing on burglary must advise the jury "which acts the defendant, upon entry, may have intended to commit [that] would amount to [a] felon[y]." (People v. Failla (1966) 64 Cal.2d 560, 564, 51 Cal.Rptr. 103, 414 P.2d 39, italics added.) Here, the trial court instructed the jury that to convict defendant of burglary it had to find that "[a]t the time of entry, ... [he] had the specific intent to commit the crime ... of false personage of another." The court further instructed that "[e]very person who falsely personates another, and does an act which, had it been done by the person falsely personated, might have subjected that person to either a suit or prosecution, or some kind of debt or fine; or which benefitted the defendant or any other person in some way, is guilty of a felony."[2] These jury *787 instructions accurately defined the felonious acts of false personation underlying the charge of burglary.
Assuming as the majority and concurring opinions apparently do, that a trial court instructing a jury on burglary must also instruct on the mental states associated with the felonious acts underlying the burglary charge, defendant here suffered no possible prejudice from the trial court's failure to specifically instruct on the mental elements of false personation. In convicting defendant of burglary under the instructions given, the jury necessarily found that when he entered the supermarket, he actually intended to "falsely personate[] another" and "do[ ] an act" that might burden the person falsely personated or benefit himself or some other person in violation of section 529, paragraph 3. Actual intent is the mental state requirement most favorable to criminal defendants. (See § 20; In re Jorge M. (2000) 23 Cal.4th 866, 891, 98 Cal.Rptr.2d 466, 4 P.3d 297 (dis. opn. of Kennard, J.).) Defendant's own testimony amply supported the jury's finding that he acted with such actual intent: he admitted that in going to the store with the check at Hartley's behest, his intent was to pass himself off as Chris Laughrey in order to "cash the check to help [Cherise Hartley] out."
I agree with my colleagues that in intending to commit the crime of false personation, defendant did not have to actually know or intend that the benefit likely to accrue to himself or another would be "wrongful," that is, a benefit to which neither had a legal right. Even if the statute required that the benefit actually be wrongful, whether or not so intended, that factual requirement of wrongfulness was amply satisfied here. The check defendant unsuccessfully tried to cash was later determined to be a forgery, written on a closed business account.[3] Therefore, defendant's false portrayal of Chris Laughrey, if successful, stood to benefit defendant himself or Cherise Hartley, neither of whom had any lawful or legal claim to the proceeds of the bad check. Given this evidence, "no jury could reasonably find" that the benefit would not have been wrongful. (Neder v. United States (1999) 527 U.S. 1, 16, 119 S.Ct. 1827, 144 L.Ed.2d 35.) Thus, any error in the trial court's failure to instruct on wrongfulness was necessarily harmless. (Ibid.)
For these reasons, I join in reversing the Court of Appeal.
Concurring Opinion by BROWN, J.
I agree with the majority's conclusion that Penal Code section 529, paragraph 3,[1] does not require "an intent to subject the impersonated individual to liability for suit or prosecution, or to secure a benefit for any person." (Maj. opn., ante, 99 Cal. Rptr.2d at p. 780, 6 P.3d at p. 702.) I also concur with its disposition. The majority, however, does not adequately define the mental state required for the crime of false personation and, in failing to do so, further obfuscates the standards for determining the mental element of a crime. I therefore write separately to clarify the mental state required for the crime of false personation. In the process, I reject the specific intent/general intent framework and propose an alternative approach.

I.
The concepts of specific and general intent "`evolved as a judicial response to the problem of the intoxicated offender' and *788 the availability of voluntary intoxication as a defense." (People v. Hering (1999) 20 Cal.4th 440, 445, 84 Cal.Rptr.2d 839, 976 P.2d 210 (Hering), quoting People v. Hood (1969) 1 Cal.3d 444, 455, 82 Cal.Rptr. 618, 462 P.2d 370 (Hood).) In Hood, supra, 1 Cal.3d at pages 456-57, 82 Cal.Rptr. 618, 462 P.2d 370, we formulated the standard definitions of specific and general intent now cited in many a judicial opinion in California: "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent. There is no real difference, however, only a linguistic one, between an intent to do an act already performed and an intent to do that same act in the future."
Since Hood, courts and litigants, when determining the mental element of a crime, invariably attempt to classify the crime as a specific or general intent crime. They have done so even though the terms "have been notoriously difficult ... to define and apply...." (Hood, supra, 1 Cal.3d at p. 456, 82 Cal.Rptr. 618, 462 P.2d 370.) Not surprisingly, the concepts of specific and general intent have "proved to be mischievous." (People v. Cain (1995) 10 Cal.4th 1, 84, 40 Cal.Rptr.2d 481, 892 P.2d 1224 (cone. opn. of Mosk, J.).)
Indeed, the concept of general intent has been especially problematic because California law recognizes more than one criminal mental state other than an "intent to do some further act or achieve some additional consequence." (Hood, supra, 1 Cal.3d at p. 457, 82 Cal.Rptr. 618, 462 P.2d 370.) For example, a crime in California may also require: (1) knowledge or actual knowledge of "the facts ... [that] bring the act or omission within the provisions of the Penal Code (§ 7, par. 5); (2) criminal negligence or "aggravated or reckless" conduct showing an "indifference to the consequences" (People v. Peabody (1975) 46 Cal.App.3d 43, 47, 119 Cal.Rptr. 780); or (3) a form of negligence where the defendant knows or should have known the facts that make the act or omission unlawful. (In re Jorge M. (2000) 23 Cal.4th 866, 887-888, fn. 11, 98 Cal.Rptr.2d 466, 4 P.3d 297.) General intent or the intent to do the proscribed act, however, does not distinguish among the mental states of knowledge, criminal negligence and negligence. As a result, our courts have struggled to consistently define the mental element of so-called general intent crimes, with little success. This struggle has, in turn, confused prosecutors and defendants alike.[2]
We have recently recognized the mischief created by our reliance on the concepts of specific and general intent and cautioned against their "rote application." (Hering, supra, 20 Cal.4th at p. 445, 84 Cal.Rptr.2d 839, 976 P.2d 210.) The majority reiterates this admonition. (See maj. opn., ante, 99 Cal.Rptr.2d at pp. 782-783, 6 P.3d at pp. 703-704) I would go further. Rather than tepidly caution courts against classifying offenses as specific or general intent crimes, I would eschew any use of these concepts except where "the court must determine whether a defense of voluntary intoxication or mental disease, defect, or disorder is available" as a policy matter. (Hering, supra, at pp. 446-447, 84 Cal.Rptr.2d 839, 976 P.2d 210.)
Rejecting the specific intent/general intent framework does not, however, end our *789 task. We must still determine the mental state necessary for the crime of false personation. To do so, we must develop a new framework for describing the mental element of a crime.
Unfortunately, the majority fails to do so. Rather than clearly define the mental element of false personation through the application of ascertainable standards, the majority offers a cryptic definition that appears to conflict with its own analysis and our case law. In doing so, the majority not only obscures the mental element of false personation, but also adds to the confusion of lower courts that must interpret our decision today.
For example, the majority "suggest[s]" that false personation "requires a deliberate effort to pass oneself off as another" (maj. opn., ante, 99 Cal.Rptr.2d at p. 785, 6 P.3d at p. 706), and states that a person guilty of false personation "must intentionally engage in a deception." (Maj. opn., ante, 99 Cal. Rptr.2d at p. 785, 6 P.3d at p. 707.) Yet, the majority also suggests that the statutory language adequately conveys this intent to a jury (see maj. opn., ante, 99 Cal. Rptr.2d at p. 785, 6 P.3d at p. 706), even though the statutory phrase, "falsely personates" (§ 529), does not have "a plain, unambiguous meaning." (People v. Mayfield (1997) 14 Cal.4th 668, 773, 60 Cal.Rptr.2d 1, 928 P.2d 485 (Mayfield) [must define a statutory term for the jury if the meaning of the term is not plain and unambiguous].) Indeed, the word "false" has many meanings, including "intentionally untrue," "not true," and "inconsistent with the facts,"and does not necessarily imply an intent to mislead. (Webster's Collegiate Diet. (10th ed.1993) p. 419; see also Washer v. Bank of America (1943) 21 Cal.2d 822, 828, 136 P.2d 297 ["falsify" has at least three meanings: (1) "mistakenly and accidentally untrue," (2) "an intentional untruth, without, however, an intent to defraud," or (3) "intentionally or knowingly untrue, made with intent to defraud"], disapproved on other grounds by MacLeod v. Tribune Publishing Co. (1959) 52 Cal.2d 536, 551, 343 P.2d 36; Brown v. State Department of Health (1978) 86 Cal. App.3d 548, 556, 150 Cal.Rptr. 344 [in the context of Bus. & Prof.Code, § 2411, the phrase "`falsely represents'" does not "require[] a finding of intent to deceive"].)
The majority also concedes that section 529, paragraph 3 requires an act "that might result in a liability or a benefit." (Maj. opn., ante, 99 Cal.Rptr.2d at p. 783, 6 P.3d at p. 704.) It, however, construes the Legislature's silence as to the mental element for this act as an intent "to punish all acts by an impersonator that might result in a liability or a benefit, whether or not such a consequence was intended or even foreseen." (Ibid., italics added.) By removing "the requirement of a `guilty mind' with respect to [the benefit/detriment] element of [the] crime," the majority, in effect, makes false personation a strict liability offense. (Staples v. United States (1994) 511 U.S. 600, 607-608, fn. 3, 114 S.Ct. 1793, 128 L.Ed.2d 608.) Because false personation is not a "public welfare" offense (maj. opn., ante, 99 Cal.Rptr.2d at p. 785, 6 P.3d at p. 706), such an interpretation violates section 20 and the well-established rule against imposing strict liability in criminal actions. (See People v. Simon (1995) 9 Cal.4th 493, 521, 37 Cal.Rptr.2d 278, 886 P.2d 1271 (Simon) [only public welfare offenses need not require "some type of criminal intent or negligence" in addition to the criminal act].)
Rather than compound the confusion, I propose the following two-step approach for determining the mental element of a crime: (1) identify each act or omission proscribed by statute; and (2) determine the mental state for each such act or omission. This approach flows directly from the language of section 20, which provides that: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." Because section 20 is "an invariable element of every crime unless excluded expressly or by necessary implication" (People v. Vogel (1956) 46 Cal.2d 798, 801, 299 *790 P.2d 850, fn. omitted), "[t]he scienter for any crime is inextricably linked to the proscribed act or omission." (People v. Sargent (1999) 19 Cal.4th 1206, 1222, 81 Cal.Rptr.2d 835, 970 P.2d 409 (Sargent).)
In the first step, we identify each act or omission proscribed by the statute. In doing so, we omit matters extrinsic to that act or omission, including the particular context or circumstances in which the statute applies. (See Sargent, supra, 19 Cal.4th at p. 1223, 81 Cal.Rptr.2d 835, 970 P.2d 409.)
After completing the first step, we then determine the mental state attached to each act or omission. (See § 20.) All crimes in California "are statutory and there are no common law crimes." (In re Brown (1973) 9 Cal.3d 612, 624, 108 Cal. Rptr. 465, 510 P.2d 1017.) Thus, we first look to the statutory language. Where the statutory language states the crime's mental element, we simply follow the Legislature's lead. For example, a criminal statute may expressly define the requisite mental state as: (1) an intent to do some further act or achieve some further consequence (see, e.g., §§ 653f, subd. (a) [solicitation must be made "with the intent that the crime [solicited] be committed" (italics added)], 289, subd. (k)(1) ["`[s]exual penetration' " must be "for the purpose of sexual arousal, gratification, or abuse" (italics added)]); (2) knowledge (see, e.g., § 308, subd. (a) [making it unlawful to "knowingly" sell, give or furnish tobacco products to a person under the age of 18 years (italics added)]); (3) criminal negligence (see, e.g., § 191.5, subd. (a) [gross vehicular manslaughter while intoxicated requires "the commission of an unlawful act ... with gross negligence" (italics added)]); or (4) negligence (see, e.g., § 836.6, subds.(b), (c) [making it unlawful to escape arrest by force or violence if the person "knows, or by the exercise of reasonable care should have known, that he or she has been so arrested" (italics added)]).
Of course, the second step is rarely so simple because the Legislature is often silent as to the mental element of a crime. In such cases, we must search elsewhere for guidance. Where the Legislature's intent is not clear from the statute or legislative history, we typically look to the nature of the proscribed acts or omissions in order to ascertain the mental state necessary for the offense.
As a general rule, "some type of criminal intent or negligence is a necessary element of a criminal offense." (Simon, supra, 9 Cal.4th at p. 521, 37 Cal.Rptr.2d 278, 886 P.2d 1271.) Thus, most criminal offenses, at a minimum, require a mental state of criminal negligence. (See People v. Martin (1989) 211 Cal.App.3d 699, 712-713, 259 Cal.Rptr. 770 (Martin).) We have, however, created an exception to this general rule for "regulatory or malum prohibitum crimes ... where the purpose is to protect public health and safety and the penalties are relatively light." (Simon, supra, 9 Cal.4th at p. 521, 37 Cal. Rptr.2d 278, 886 P.2d 1271.) Such offenses "`are punishable despite the absence of any criminal intent or criminal negligence.'" (Martin, supra, 211 Cal. App.3d at p. 713, 259 Cal.Rptr. 770.)
Thus, if the proscribed act or omission is akin to a violation of a regulation designed to protect the public from widespread injury, then we may construe the Legislature's silence as an intent to impose strict liability (see Simon, supra, 9 Cal.4th at p. 521, 37 Cal.Rptr.2d 278, 886 P.2d 1271 [identifying several strict liability offenses]) or a form of negligence (see In re Jorge M., supra, 23 Cal.4th at pp. 887-888, fn. 11, 98 Cal.Rptr.2d 466, 4 P.3d 297 [requiring "proof of a mental state slightly lower than ordinarily required for criminal liability"]). If not, then we must adhere to section 20 and require at least knowledge or criminal negligence. (See Martin, supra, 211 Cal. App.3d at pp. 712-713, 259 Cal.Rptr. 770.)
In those cases where legislative silence requires us to choose between knowledge and criminal negligence, we focus on the nature of the proscribed acts or omissions. If the statute criminalizes traditionally lawful conduct, the requisite mental state *791 should be knowledge. (See, e.g., People v. Rubalcava (2000) 23 Cal.4th 322, 331-332, 96 Cal.Rptr.2d 735 [construing "the statute to contain a `knowledge' element"]; People v. Coria (1999) 21 Cal.4th 868, 880, 89 Cal.Rptr.2d 650, 985 P.2d 970 (Coria) ["the defendant must have knowledge of the facts which make the chemical synthesis unlawful"].) In other words, the guilty party must have actual knowledge of the facts that makes his or her act or omission unlawful. (§ 7, par. 5.) Otherwise, the mental state attached to the proscribed act or omission should be criminal negligence. (See Simon, supra, 9 Cal.4th at p. 522, 37 Cal.Rptr.2d 278, 886 P.2d 1271 [requiring proof of "knowledge or criminal negligence"].) In other words, the guilty party must act in an "`aggravated, culpable, gross, or reckless'" manner even though he had "`actual or imputed'" knowledge of the facts that makes his act or omission unlawful. (People v. Penny (1955) 44 Cal.2d 861, 879-880, 285 P.2d 926.)

II.
I now apply this framework to the crime of false personation codified in section 529, paragraph 3. As written, the statute proscribes two acts: (1) "falsely person[ating] another in either his private or official capacity"; and (2) an "act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person...." (Ibid.) Both acts are necessary to establish guilt.
As to the first proscribed act, the phrase "falsely personate," as understood at the time of the enactment of section 529, defines the mental state attached to the act as an intent to mislead others into believing that defendant is the impersonated individual. This phrase, as I noted earlier, is neither clear nor unambiguous in modern times. Our early decisions interpreting the statute (see People v. Maurin (1888) 77 Cal. 436, 439, 19 P. 832 [reversing a conviction under § 529 because there was no evidence defendant "pretended to any human being that he" was another]), and similar language in other statutes (see, e.g., People v. Sprague (1879) 53 Cal. 491, 494 [the word "false" as used in Code Civ. Proc., former § 2061, means "untrue, not as the result of mistake or inadvertence, but willfully and with design to deceive"] ), however, indicate that no such confusion existed at the time of the enactment of section 529 and establish the intent to mislead as an element of the offense. Such a conclusion is further bolstered by the 19th-century definition of "false." (See 1 Bouvier's Law Diet. (1897 ed.) p. 755 ["Applied to the intentional act of a responsible being, the word "false" "implies a purpose to deceive...."].) Indeed, the majority acknowledges that these 19th-century sources "strongly suggest" that a defendant guilty of false of personation must have an intent to mislead. (See maj. opn., ante, 99 Cal.Rptr.2d at p. 785, 6 P.3d at p. 706.)[3]
With respect to the second proscribed act, the Legislature is silent as to the requisite mental state. Instead, the statute merely proscribes an act that either creates liability for the impersonated individual or provides a benefit to another. (§ 529, par. 3.) Because the crime of false personation is not regulatory in nature (see Simon, supra, 9 Cal.4th at p. 521, 37 Cal.Rptr.2d 278, 886 P.2d 1271) and does not criminalize traditionally lawful conduct (see Coria, supra, 21 Cal.4th at p. 880, 89 Cal.Rptr.2d 650, 985 P.2d 970), the mental state attached to the second proscribed act should be criminal negligence. Thus, a *792 defendant is only guilty of false personation "`[i]f a reasonable person in defendant's position would have been aware of'" the possibility that his act might create a liability or provide a benefit. (Williams v. Garcetti (1993) 5 Cal.4th 561, 574, 20 Cal. Rptr.2d 341, 853 P.2d 507, italics omitted, quoting People v. Watson (1981) 30 Cal.3d 290, 296, 179 Cal.Rptr. 43, 637 P.2d 279.)
Synthesizing these proscribed acts and their attached mental states, I would find that the crime of false personation has the following elements. First, a defendant must impersonate another individual with the intent to deceive others into believing he is the impersonated individual. Second, a defendant must be criminally negligent in doing an act that might impose liability on the impersonated individual or provide a benefit to another.
III.
Although my interpretation of the mental element of false personation differs from the majority's, the difference does not benefit defendant. At trial, defendant admitted that "he intended to pass himself off as [Chris] Laughrey in order to cash the check" for Cherise Hartley. (Maj. opn., ante, 99 Cal.Rptr.2d at p. 781, 6 P.3d at p. 703.) In doing so, defendant admitted the very elements of the offense I described above. Specifically, he (1) assumed the identity of another individual with the intent to mislead others as to his true identity, and (2) knew that his act might benefit another person.
In any event, defendant's proposed interpretation is unavailing. Even if, as defendant contends, the crime of false personation requires an intent to create a liability or provide a benefit, defendant still cannot prevail because he admitted that he intended to benefit Hartley. Accordingly, any error is harmless beyond a reasonable doubt, and I would affirm his conviction. (See People v. Flood (1998) 18 Cal.4th 470, 504, 76 Cal.Rptr.2d 180, 957 P.2d 869.)
NOTES
[1] Unless otherwise indicated, all further statutory references are to the Penal Code.
[2] When polled, the jurors unanimously indicated they had found defendant guilty on the false personation theory.
[3] The instruction given the jury generally tracked the statutory language and read as follows: "Every person who falsely personates another, and does an act which, had it been done by the person falsely personated, might have subjected that person to either a suit or prosecution, or some kind of debt or fine; or which benefitted the defendant or any other person in some way, is guilty of a felony."
[1] All further undesignated statutory references are to the Penal Code.
[2] As relevant here, section 529 defines the crime of false personage as follows: "Every person who falsely personates another in either his private or official capacity, and in such assumed character ...: [¶] ... [¶] 3. Does any other act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person; [¶] Is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment." (Id., par. 3.)
[3] The jury acquitted defendant of a forgery charge, thus concluding the prosecution failed to prove he committed that offense.
[1] All further statutory references are to the Penal Code unless otherwise stated.
[2] Indeed, oral argument proved instructive in this regard. During argument, the deputy attorney general, on several occasions, stated that the crime of false personation was a general intent crime that required an intent to mislead. She, however, found it difficult, if not impossible, to conflate the concept of general intent with an intent to mislead. Indeed, she made several aborted attempts to reconcile these concepts with no success. Of course, the deputy attorney general can hardly be faulted for her inability to resolve a conundrum of our own making.
[3] Although the majority appears to reach the same conclusion (see maj. opn., ante, 99 Cal. Rptr.2d at pp. 784-785, 6 P.3d at p. 706-707), its analysis does not seem to be internally consistent. By implicitly approving the trial court's instruction, which parroted the statute and did not require an intent to mislead, the majority effectively deleted this mental element from the offense. (See Mayfield, supra, 14 Cal.4th at p. 773, 60 Cal.Rptr.2d 1, 928 P.2d 485.)